THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN PERSHAEC, Defendant.

(In the Matter of the Procedure on an Order for Examination as to the Sanity of a Defendant.)

and

In the Matter of the Procedure on an Order for Examination as to the Sanity of John Thompson, a Defendant Committed by an Order Entered September 15, 1939, in People v. Thompson, Indictment for Assault, Second Degree.

Court of General Sessions of County of New York, October 6, 1939.

Appearances in Pershaec case:

*William C. Chanler, Corporation Counsel [Thomas W. A. Crowe, Assistant Corporation Counsel,* of counsel], for the motion.

*Thomas E. Dewey, District Attorney [Stanley H. Fuld, Assistant District Attorney,* of counsel], for the People.

*Edward T. Tighe, Representing Criminal Division, Legal Aid Society,* for the defendant.

Appearances for same relief in Thompson case:

*William C. Chanler, Corporation Counsel [Thomas W. A. Crowe, Assistant Corporation Counsel,* of counsel], *ex parte.*

COLLINS, J. It was conceded, of course, at the outset of argument, that the sitting court was limited, in any effective order to the instant case, and to any specific similar cases arising in Part I of the court during this September, 1939, term, and that relating to uniform procedure as to " all other causes hereafter to arise," etc., any decision of the court could only have opinion force, though the hope was expressed that an opinion might serve as a guide or lead to an established uniform practice within a short period of time. As may be readily appreciated on a careful reading of the statute, many difficulties are presented to those familiar with hitherto established practice, other than mere change of former " commission " method.

In his moving papers the corporation counsel states the following facts:

" The provisions of Chapter V of the Code of Criminal Procedure relative to inquiry into the sanity of a defendant before or during the trial or after conviction, were substantially amended by chapter 861 of the Laws of 1939 in effect September 1, 1939.

" Section 659 of the Code of Criminal Procedure, as so amended, provides in substance that in New York City, upon request of the Court, the director of the division of psychiatry of the department of hospitals of such city shall cause an examination of a defendant to be made by two qualified psychiatrists of such division, of whom the director of said division may be one. Said section provides further that ' they (the designated qualified psychiatrists) shall be aided by the corporation counsel of such city.'

" The above-entitled criminal action now pending in this Court in the first action, or one of the first actions, in which an examination into the sanity of a defendant has been ordered under the provisions of the Code of Criminal Procedure as amended by Chapter 861 of the Laws of 1939.

" Certain steps have already been taken in this action, to wit:

" (a) On September 1, 1939, an order was made by this Court instituting an inqury into the sanity of the above-named defendant.

" (b) On September 5, 1939, an order was made by the Hon. CORNELIUS F. COLLINS, Judge of this Court presiding in Part 1, directing that the defendant be committed to the Division of Psychiatry of Bellevue Hospital of the City of New York and that the Director of said Division of Psychiatry conduct such examination into the sanity of the defendant and render a report to this Court as to the result thereof.

" (c) The director of said division, Karl M. Bowman, M. D., pursuant to the aforesaid order, on the 15th day of September, 1939, duly designated himself as one of the qualified psychiatrists and Benjamin Apfelberg, M. D., as the other qualified psychiatrist, to conduct such inquiry.

" (d) On the same date, each of said qualified psychiatrists took the oath required by statute which oath was filed in the office of the Clerk of the Court of General Sessions.

" (e) The clerk of this Court on September 15, 1939 issued a notice to the district attorney of New York County, to the attorneys for the above-named defendant, and to the corporation counsel that an examination into the sanity of the said defendant would be made at the Prison Ward of Bellevue Hospital at 2 o'clock P. M. on September 20, 1939.

" At each of these steps some question has always arisen as to the *modus operandi* to be pursued under the amendatory Act. Consultation and conference has been necessary at each new stage.

How far and in what manner were the procedure and the facilities of this Court in connection with such sanity inquiries, as these existed prior to September 1, 1939, available to be adapted and pursued so that the purposes and objectives of the amendatory statute would be fully achieved? Uniformity of action in this and all subsequent proceedings of this kind is indispensably necessary in this Court as well as in the other jurisdictions.

" The corporation counsel of the City of New York, for the guidance of all concerned, believes that this requisite uniformity of action can best be attained by an order or other suitable direction of this Court prescribing and clarifying with reasonable particularity the procedure henceforth to be pursued in all sanity inquiries under the new statute."

In my opinion the controlling intention of the Legislature was to substitute a new form of determining the sanity or insanity of a defendant in specified cases which would eliminate the expense to the county incident to the commission method heretofore prevailing. In so doing, particularly in the five counties within the city of New York, the Legislature has set up a new commission method consisting of two qualified psychiatrists designated, after formal court order, by governmental hospital authority. In New York city designation is made by the director of the division of psychiatry of the department of hospitals. In the instant case such a commission has been designated, and qualified as stated in the moving papers of the corporation counsel. It seems to me, therefore, the next step is to proceed with their inquiry with precisely the same court facilities as heretofore prevailing. It seems to me that there can be no question of the soundness of this conclusion, and, therefore, the clerk of the court has been directed without the necessity of any formal order to make available to such commission all of the established facilities of the court incident to such proceedings, which includes clerks, attaches, stenographers, etc., suitable accommodations for conducting hearings and the means of executing any proper order or direction of the commission.

This being a court of record, the director of psychiatry should of course upon the designation of any commission officially notify this court of such designation, that it may be filed, and the designees formally qualify as required by law. The practice has been for a clerk of the court to administer the oath, and this practice, so as to pursue the course of orderly procedure, should be adhered to. It was followed in the instant case.

Attention should be called, however, to a problem which presents itself at the outset of commission deliberations under the new law as compared with former procedure. Under the Code of Criminal

Procedure provisions repealed, a court arriving at a decision to order formal inquiry by a commission had a choice between two forms of commission. One of these, under sections 658 to 662, provided for a commission of three, composed of a lawyer, a qualified psychiatrist, and a third member who could be a lawyer, a doctor or a layman. In recent years the practice had grown in this court to appoint a lawyer and two doctors, at least one of whom had to be a psychiatrist. This form of a three-member commission contemplated formal hearing, with counsel on both sides, the receiving of evidence, etc., and any necessary medical examination, followed by report to the appointing judge. The second form allowed the appointment, under section 870, of " two physicians, who shall have had at least five years' experience in actual practice, at least one of whom shall be a qualified psychiatrist as provided by law, neither of whom shall be a physician connected with the institution in which such person so to be examined is confined." A commission so appointed contemplated a medical examination that might be entirely free from the taking of formal evidence, and depended almost entirely on psychiatric clinical diagnosis. In some instances this scientific method of approach in arriving at a conclusion as to the subject's mental condition was the most practical, and the only one advisable under the circumstances of the case. The taking of further evidence would be unnecessary unless the conclusion was challenged — a very rare occurrence.

Under the new law there is only one form of commission provided, and such commission is entirely at liberty to determine at the outset which course of procedure to follow, and of course it may determine to pursue elements of both former methods. The new law provides, as above stated, that the doctors designated " shall be aided by an assistant corporation counsel assigned for that purpose by the corporation counsel of such city " (§ 659). This seems to me to have been a very wise precaution and potentially supplies the purpose intended under the old law in compelling the appointment of a lawyer member of the commission. Undoubtedly where formal hearings are conducted, with both sides represented, it becomes necessary frequently to impartially rule on the admissibility of evidence, and in this connection the assistant corporation counsel will be an almost indispensable advisor, and of course his helpfulness to the commission in connection with other legal angles of procedure and especially the preparation of formal report, and the seeking of any necessary advice, direction or ruling of the court, as instanced in the present case, will be of great practical importance not only to the commission but to the court.

As to the Pershaec case, it seems there is nothing more to be said, except to advise the designees, whom I have described as constituting a new form of commission, to proceed accordingly to the conclusion of their labors and to submit a report to Judge STREIT, of this court (who necessarily inaugurated the proceeding after a conviction on a plea of guilty, but before final judgment), so that any necessary judicial action may be determined.

Ordinarily the temptation would be strong at this point to be content to state, as a matter of opinion, that the evident intention of the Legislature was merely to change the manner of inquiry by substituting a commission composed of physicians from hospitals for purposes of economy, and that, therefore, the procedure would be otherwise practically the same as heretofore, except for the fact that the new form of commission would operate instead of the old. But on argument, and as a result of conference had with the corporation counsel and the director of the division of psychiatry of the department of hospitals, it appears that numerous complications have presented themselves, including the method of originally starting the inquiry, the practice to be followed under such circumstances and the difficulties in administrative operation in the hospitals of the city if staff physicians had to be designated in all cases and required to qualify as referees whenever the courts found it necessary to commit a defendant for examination where his mental condition might possibly be questioned, even though the court did not at the time have tangible justification for stating that there was reasonable ground for believing the defendant *non compos mentis*.

The construction and interpretation of the act itself, and its application with respect to initial action, therefore, become necessary, so that a practicable application of the law to necessary procedure and hospital administration be established to accomplish the objectives most efficiently.

It seems, therefore, that the theoretical basis of such procedure is the best guide to legislative intention to accomplish the purpose and aim of such legislation.

Section 1120 of the Penal Law provides as follows:

" Irresponsibility of idiot or lunatic. An act done by a person who is an idiot, imbecile, lunatic or insane is not a crime. A person cannot be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense.

" A person is not excused from criminal liability as an idiot, imbecile, lunatic, or insane person, except upon proof that, at the

time of committing the alleged criminal act, he was laboring under such a defect of reason as:

" 1. Not to know the nature and quality of the act he was doing; or

" 2. Not to know that the act was wrong."

This act is undoubtedly declarative of the common law, except that it may be said that the part relating to responsibility for crime is of statutory origin, following the rule laid down in an English case of the last century and referred to as the M'Naghten Formula. It is quite clear that the obligation is on the court to determine whether or not a defendant is in such a state of idiocy, imbecility, lunacy or insanity as to make it incumbent on such court to see that he is not put to trial, or sentenced, if there has been a conviction or trial. This element is an absolutely necessary subject for determination, apart from the adjudication of criminal responsibility, and often involves the distinction between so-called " medical " and " legal " insanity or responsibility, though a conclusion as to the latter is not a necessary factor to stay trial or sentence.

This court, in *People* v. *Whitman* (149 Misc. 159), exhaustively reviewed the statutory and case law relating to the determination of the question of sanity of a defendant charged with crime, collating the various decisions on the subject, together with the history of statutory enactment in this State. At that time (1933) section 870 of the Code of Criminal Procedure, then known as section 836, had just been extensively amended, and in the same statute repealed by the new enactment of this year. Sections 658–662 of the Code of Criminal Procedure, as they then existed, were amended in 1936, and the statutes repealed by the new enactment of this year have been in operation less than three years. Under the old section 658, as it existed prior to 1936, provision was made for the appointment of a commission " of not more than three disinterested persons," and it has been urged that the scope of this provision was responsible for abuses that led to the enactment of the statute now under consideration.

It seems to me that all of the decisions and statutory enactments relating to the subject-matter, in so far as the general principle or background establishing the purpose of such enactments is concerned, admit of but one conclusion, namely, that they are to aid and assist the *court*, so as to enable such court wisely to determine whether the defendant is in such a mental state that further proceedings in any pending criminal case must be proceeded with or stayed during a period of necessary treatment, and in this respect the law is the same today as in earliest times.

The only other claimed purpose for these statutes is that they tend potentially to prevent long drawn out and vexatious trials of issues on special pleas of insanity, with attendant expense, where adequate means of interlocutory proceedings are not available.

In *Freeman* v. *People* (4 Den. 9) the court said: " The statute declares that ' no insane person can be tried, sentenced to any punishment, or punished for any crime or offense, while he continues in that state.' (2 R. S. 697, § 2.) This, although new as a legislative enactment in this State (3 R. S. 832), was not introductory of a new rule, for it is in strict conformity with the common law on the subject ' If a man,' says Sir William Blackstone, ' in his sound memory commits a capital offence and before arraignment for it he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense? If, after he be tried and found guilty he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non sane memory, execution shall be stayed, for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution ' " (pp. 19, 20).

This statement of the law in the *Freeman* case is just as cogent and as applicable today as it was in 1847, when the opinion was written.

When formal inquiry proceedings are instituted, either on the court's own motion or that of counsel for people or defendant, looking to formal adjudication, an interlocutory proceeding is inaugurated which is to be conducted in accordance with due process of law, the rights of the People and of the defendant must be safeguarded, and the requirements of judicial or quasi-judicial rectitude observed (the commissioners are quasi-judicial officers) to the end that foundational justification for the court's subsequent action is established as a matter of record, and any minutes of the evidence and proceedings must be preserved as a part of the court records. Such proceedings should not be instituted impulsively, and only after due deliberation and consideration, when the court has adequate reason to believe that a defendant is in such a state of mind, etc., is there justification for making an order instituting such a procedure.

As stated in the *Whitman* case (*supra*, 176, 177), " A commission is essentially in the nature of a proceeding *de lunatico inquirendo* conducted under the supervision of the court itself and intended only as a guide to future conduct of the proceedings under the

indictment, suspending their progress by a prescribed method in the event statutory incompetence of the defendant is judicially established at the time of report or directing their further prosecution to final judgment in accordance with due process of law, if the defendant is, in the opinion of the court, in the possession of his faculties to the degree of being capable of ' understanding the proceeding or making his defense.' The report and finding of any means of inquiry and the information obtained thereunder are, of course, available, as previously stated, to the people or the defendant for any purpose or to any advantage that they might legally serve."

In this light of statutory and case law on the subject, we now come to a consideration of the difficulties said to be presented in the construction and interpretation of the new statute, in relation particularly to its practical application and its scope and limitations, in procedural operation.

Under the new law, section 658 of the Code provides as follows: " If at any time before final judgment it shall appear to the court having jurisdiction of the person of a defendant indicted for a felony or a misdemeanor that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, or if the defendant makes a plea of insanity to the indictment, instead of proceeding with the trial, the court, upon its own motion, or that of the district attorney or the defendant, may in its discretion order such defendant to be examined to determine the question of his sanity."

Under section 659 it is provided, in part, in the first paragraph, " In New York City upon request of the court the director of the division of psychiatry of the department of hospitals of such city shall cause an examination of such defendant to be made." Under the repealed section 658 it was provided, in part, " Under a special plea of insanity to an indictment, or at any time before a final judgment, whenever it shall appear *upon sufficient and satisfactory proof*, that there is reasonable ground for believing that a defendant is insane, instead of proceeding with the trial of the indictment, or sentence after a conviction thereunder, the court may upon motion of either the people or the defendant, or on its own motion, appoint a commission. * * * *The court may in its discretion, as an aid in determining whether there is reasonable ground for believing that a defendant is insane, commit the defendant in a proper case, to a public hospital for observation for a reasonable period, to be advised as to the mental condition of the defendant*, and the information thus obtained shall be available as evidence, in the event of the appointment of a commission as herein provided. * * * (Opinion italics.)

\* \* \* The commission must summarily proceed to make their examination, and conduct their hearing."

The new Code section 660 provides, in part: " The psychiatrists so designated shall forthwith examine the defendant. Examinations may be made in the place where the defendant is detained, or, upon recommendation of said superintendent or director the court may commit the defendant for a reasonable period for observation and examination to such hospital as may be designated by such superintendent or director."

There has been some confusion because the phrases " upon sufficient and satisfactory proof " and " The court may in its discretion, as an aid," etc., found in the old section 658, are not included in the new law, and the query is put, does this mean a repeal of the judicial requirement or right which the language conveys, and limit the court in the first instance to making only such an order as calls for an elaborate formal inquiry necessitating formal designation of hospital psychiatrists who must take oath as referees, etc., and proceed in formal commission method, and thus deprive the court of the aid formerly afforded by a preliminary hospital examination of a defendant by the method heretofore known as commitment for observation, treatment and report? In other words, can it be said that because of the method of repeal of the old law, the court is deprived of the right to make a commitment for observation of a defendant, before deciding that it appears there is reasonable ground for believing, etc., and accordingly making or denying a formal order " to determine the question of his sanity?"

In my opinion there is no justification for so construing the statute, since the whole trend of decisions and statutory enactment establishes that necessary determination in this scope of judicial duty is in the conscience of the court, and that procedural enactments must be construed in the light that they are intended to aid and not hamper the court in the sound exercise of its discretion or judgment.

The difference in phraseology between the old and the new section 658 merely denotes, it seems to me, a difference in legalistic literary or drafting style. When the Legislature decided to change the form of commissions in lunacy proceedings to effect the desired economy, the phraseology became a mere matter of the mechanics of draftsmanship. It may be that the language " upon sufficient and satisfactory proof " and " The court may in its discretion " commit " for observation " preliminary to the appointment of " a commission," as an aid, etc., was deemed by the draftsman to constitute mere surplusage, and to be unnecessary in the new section, because as to the former there could be no question that satisfactory proof

had to be adduced as a matter of course, " to make it " appear to the court " there is reasonable ground for believing," etc., which requirements are in both the old and the new sections, and as to the latter, that the court has the power, without this section, to commit for necessary treatment and observation a defendant in custody, either as a common-law or an inherent right or under the Mental Hygiene Law.

At any rate, the omission from the new section of the language referred to could not admit of such strained or tortured interpretation as to justify a construction forbidding the court to require " sufficient and satisfactory proof " to make it appear, etc., or to make a justifiable hospital commitment.

To understand the problem thoroughly, as it applies to the prevailing practice in this court, and the incidental importance of the construction that the court has power to order a preliminary hospital commitment as an aid in determining whether an order instituting a formal inquiry should issue, an explanation is advisable. All cases come into this court either as a result of the holding of a magistrate for the action of a grand jury, or as a result of indictment in the first instance. At times counsel for a defendant may inform the court orally, before or after indictment, that a defendant is ill, is giving some indications of an unbalanced mind, that he is incoherent or very difficult to understand, or that the nature of the crime or the manner of its commission, or the defendant's family history, convinces him that it is his duty to call this condition to the attention of the court, preliminary to any action that may be deemed advisable, or to secure hospital treatment or examination. If the defendant is a prisoner, the court may occasionally, under such circumstances, request the warden or the physician of the Tombs to give information on the subject. Such prison officials frequently inform the court on their own initiative that a defendant is ill or acts in a queer or abnormal manner that might indicate insanity, and suggest hospital treatment and examination on a court order. It may happen that an assistant district attorney seriously doubts the sanity of a defendant. In all these cases the court could not feel warranted in precipitately concluding that there was justification for certifying that it appears to the court that there is reasonable ground for believing the defendant insane, and yet it often becomes necessary to commit defendants of this type for hospital examination, treatment and report.

A special plea of insanity, etc., may be interposed to an indictment. A formal motion for the appointment of a lunacy commission may be made. Can it be said that the mere interposition of a plea or a motion, without satisfactory proof, warrants the institution of

an elaborate special proceeding *de lunatico inquirendo?* I think not. Under the repealed statute that requirement of proof was a condition precedent to the making of such an order. This line of reasoning prevents, in no small measure, the granting of a motion without preliminary hospital examination. In most of this second type of cases the court is well warranted, however, in committing the defendant for hospital treatment and report, reserving decision pending professional hospital advice.

Collectively quite a large number of hospital commitments, originating from both sources of court information above referred to, have been necessarily made, in a large percentage of which commissions were not appointed, in fact it may be said that the comparative percentage of commission appointments was very small.

Another practical aspect of the subject should be taken into consideration. Our hospitals are organized and administered as such and should not have thrust upon them a formidable volume of elaborate court inquiries, requiring that their medical staffs act as referees in an unnecessarily large number of cases. Such a condition would seriously strain their facilities and interfere with the performance of their general duty, or require that their present personnel be considerably augmented, without justification. If hospital examination of a defendant is made without the formality of legally constituted inquiry, and it is determined that the case calls for further examination by a commission, no time has been lost, and the findings of the hospital examination can be fully utilized by the designated commission. The director of the psychiatric division of the New York city department of hospitals has informed this court, through the corporation counsel, that even in cases where the court has ample and sufficient proof that a defendant is insane, which undoubtedly justifies the making of an order for formal inquiry in the first instance, that defendant should be committed under such an order without putting the director to the necessity of formal recommendation or request, because even a casual clinical examination of the defendant aids the designating hospital authority in selecting those members of his staff best equipped by experience and specialization for the particular case.

The conclusion is irresistible that the court has the power to order a preliminary examination, either as an inherent right or under the provisions of the Mental Hygiene Law (§ 81, subd. 5), and the new law is not to be construed as abrogating this right. The prevailing practice of committing for observation should be adhered to whenever advisable. Of course, where the facts conclusively disclose in the first instance that formal inquiry should be directed, in other

words that a commission should be designated, such an order should be made, but even then it would seem advisable that the court should commit the defendant, so that the director of psychiatry may be aided in making his designation as required by the statute.

In all other respects the Code provisions, sections 658 to 662-d, inclusive, seem entirely practicable for efficient service, in fact the parts of sections 662 and 662-a relating to places of commitment and commission recommendation thereto, effect a decided improvement, from a humane aspect, over previous practice.

" In re Matter of the Procedure on an Order for Examination as to the Sanity of John Thompson, a defendant committed," etc., to Bellevue Hospital under a pending indictment, counsel, including Edward T. Tighe, Esq., for defendant, being the same as in the Pershaec case, there is a prayer for relief similar to that in the Pershaec case. On request of counsel, the proceeding is made a part of the instant case because the relief sought in the instant Pershaec case contemplated including other cases, and because the Thompson case afforded an opportunity to illustrate what might become typical of justified general practice under the new law, in the Court of General Sessions and in other county courts within New York city.

On September 13, 1939, the defendant Thompson was indicted in this court under three counts for assault in the second degree and carrying a dangerous weapon. On September fifteenth, and before the defendant was called upon to plead, the Tombs physician informed the court that this defendant, a prisoner in the Tombs, was ill and displayed symptoms indicating that he might be insane, and suggested hospital commitment. Under these circumstances the right of the court to commit cannot seriously be questioned, notwithstanding the omission from a substituted new statute of generally permissive phraseology in the one repealed. The right of the court to order suitable emergency hospitalization for a prisoner held on its commitment has never been questioned, and of course there was not adequate justification for concluding that it appeared to the court that there was reasonable ground for believing the defendant insane — not even the Tombs physician could so conclude. This presented a practical case, but in committing a defendant for treatment, prudence dictated that it would be well to ascertain if there was reasonable ground for believing him insane. The old form hitherto used by the court for that purpose was not well adapted to the instant case, and a new one was prepared. The court has been urged by the corporation counsel to include, in the opinion sought, the recitals in that form, so that if acceptable it could, at least in principle, be adapted to this situation in other

counties, within the city, at least, changing the name of the hospital and prison, when necessary. Following are the recitals, omitting the name of the defendant:

" It having been made to appear to the Court that the said .....................is in need of medical treatment and that there may be reason for making it appear to the Court that there is reasonable ground for believing that said defendant may be insane or may be a person of unsound mind and incapable of understanding the proceeding herein, it is

" Ordered that the said....................be committed to the Psychiatric Division of Bellevue Hospital in the Borough of Manhattan of the City of New York for a reasonable period, for ·treatment, observation, examination and report as to his physical and mental condition; and it is

" Ordered that at the conclusion of said treatment, observation and examination, the Director of the said Psychiatric Division make report to the Court as to the result of his observation and examination, and at the same time return the said....................to the custody of the Warden of the City Prison of the City of New York, in the Borough of Manhattan, as provided by law.

" Enter."

On September twenty-fifth the director of psychiatry rendered a report stating in conclusion that examination revealed the defendant to be " psychotic," and a " suitable case for commitment to a State institution." Therefore, an order was made instituting formal inquiry, etc., the recitals of which for the same reasons stated as to the former order, are included in this opinion in blank form:

" An Order of this Court having been made and entered on the ........day of..............., ...., committing the above named ...................., a defendant under Indictment pending in this Court for a Felony, viz.,.......................to the Psychiatric Division of Bellevue Hospital for treatment, observation and examination, etc., and a report having been rendered thereon by the Director of the Psychiatric Division of the Department of Hospitals on the........day of..............., and

" It appearing to this Court that there is reasonable ground for believing that the said defendant is in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, now therefore it is

"Ordered, that said defendant be formally examined in accordance with the provisions of the Code of Criminal Procedure to determine the question of his sanity, and it is further

"Ordered, that the Director of the Division of Psychiatry, of the Department of Hospitals of the City of New York cause an examination of such defendant to be made accordingly for such purpose, designating from the staff of such Division two qualified psychiatrists who shall qualify as provided by law and file their formal designation in the Office of the Clerk of this Court before proceeding with their examination, and it is further

"Ordered, that upon the completion of such examination a report be made to this Court, in form and manner as required by law.

"Enter."

The commission was duly designated and qualified, and is now holding sessions, proceeding as advised in the Pershaec case. On report, such action will be taken as the circumstances justify. All the rights of the People and of the defendant are preserved. This, it seems, furnishes a sound basis for a standard of practice, and is in full accord with the process of law under the Code provisions as amended. A form of order, including commitment where the motion for "formal inquiry" is granted in the first instance, on adequate proof to the court that there is reasonable ground for believing the defendant insane, is on file in the clerk's office, in the pending case of People v. Harnett.

Directions have been given to the clerical staff of this court as indicated in the Pershaec case, and further formal order does not seem necessary as to their general performance of duty whenever an inquiry commission has been designated. As to action in any specific case, however, any order of the court would depend on the circumstances of the particular case.

All of the foregoing related particularly to application, interpretation and construction of the new sections 658 to 662-d of the Code, and the instant cases on which the motions herein were based were entirely within the scope of these sections, so that, generally speaking, there would, ordinarily, be no necessity for any further extension of this opinion. On argument, however, counsel urged, the district attorney in particular, and it seems quite properly, that the scope of the general provisions of the new section 870 of the Code was so susceptible of an extreme construction which might effect a drastic innovation in prevailing practice and seriously disturb well-settled procedure, that this court, in pursuance of the relief prayed for, should consider that section on this motion.

Under the amendatory act (Laws of 1939, chap. 861), an entirely new section 870 of the Code of Criminal Procedure was substituted

for the former section. In the first paragraph it provides as follows: " If at any time it shall appear to a court having jurisdiction of a defendant charged with a felony or a misdemeanor but not under indictment therefor or charged with an offense not a crime, other than a traffic infraction as defined by the Vehicle and Traffic Law, that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceedings or of making his defense or if the defendant makes a plea of insanity, the court, upon its own motion or that of the district attorney or of the defendant, may in its discretion stay the proceedings and order such defendant to be examined to determine the question of his sanity, and the procedure therefor shall be as set forth in section six hundred fifty-nine, six hundred sixty, six hundered sixty-one, six hundred sixty-two, six hundred sixty-two-a, six hundred sixty-two-b, and six hundred sixty-two-c."

That part of the first paragraph of this section which refers to " a defendant charged with a felony or misdemeanor but not under indictment," is entirely apposite, in New York city, to General Sessions or the County Courts. The defendant is awaiting action by the grand jury, and the procedure would in all respects be as above indicated; in fact, where commitment "for observation," etc., is resorted to, in almost all instances action by the grand jury would be had before the committing court received the hospital report, and further action would be merely routine. Special Sessions would have none of this type of case " not under indictment," for the reason that when the defendant is within its jurisdiction he has been held for Special Sessions. An information takes the place of an indictment, and is a condition precedent to Special Sessions jurisdiction. Though the need for an insanity inquiry rarely arises, that court would be entitled to proceed in all instances in the same manner as indicated for General Sessions and the County Courts, after indictment, by virtue of the general provisions of this act, and specifically by the provisions of section 64 of the Code of Criminal Procedure and section 30 of the Inferior Criminal Courts Act.

If the conclusion can be justified that the Legislature intended the phrase, " having jurisdiction of a defendant charged with a felony or a misdemeanor but not under indictment therefor," to limit, in felony cases, the exercise of jurisdiction over such defendants to constitutional courts of record (the Supreme, General Sessions, or County Courts), no difficulty arises in applying this part of the statute. Unfortunately, however, the general language, " If at any time it shall appear to a court," is so wide that, if the statute is strictly and literally interpreted, it might be said to con-

fer on a magistrate, and, perhaps, in some instances outside of New York city, on a justice of the peace, the power, in felony cases, not alone to inaugurate, as a court, a formal proceeding of an interlocutory *de lunatico inquirendo* nature, but also to stay the proceedings from the time of making such an order, and that would undoubtedly be a drastic innovation in our practice and presents an important construction problem.

It must be borne in mind that generally there is an interval between apprehension or arrest in felony cases, and a holding for the action of a grand jury. Of course there may be an indictment in the first instance, but usually arraignment before a magistrate follows arrest, and the defendant is entitled to a hearing, unless it is waived, or intercepted by indictment of the defendant. During the interval, of course, the magistrate, as a court of commitment, has jurisdiction of the person of the defendant. If this section is to be construed as meaning that in the interval a magistrate has jurisdiction, as a committing magistrate, of the person of a defendant " charged with a felony," that he may commit as provided by this section, and, in his discretion, " *stay the proceedings* " from the time of making such an order, it would follow that in " infamous crimes," such as murder in the first degree, robbery, kidnapping, burglary, etc., it could possibly have the extreme effect of staying all further proceedings, including even those of a grand jury, at least, until the report of a commission designated by a director of psychiatry is received, and then, assuming that he had the power, the magistrate could confirm, commit and stay further proceedings, or reject their report, etc. Could the Legislature possibly have had any such intention?

In my opinion, having in mind all of the circumstances and ramifications involved, the language " If at any time it shall appear to a court having jurisdiction of a defendant charged with a felony * * * but not under indictment therefor," as employed in this statute, must be construed as applying only to such courts, or the court, having jurisdiction of the " felony " as well as custodial jurisdiction of the defendant, and as referring only to defendants awaiting action by the grand jury, and that that was the intention of the Legislature. In other words, it must be construed as governing jurisdiction of the crime as well as of the person of the defendant. I believe, especially in considering the serious complications which might otherwise arise, that even if it is contended that this conclusion is open to argument, it is the only safe determination for a court of original jurisdiction to make.

In construing a statute which embodies an ambiguity that permits two constructions, one of which would be unconstitutional, it is

the duty of the court so to construe as to sustain that which would give the statute constitutional effect. The presumption is that the Legislature intended so to enact.

The Magistrates' Courts are inferior courts of limited jurisdiction, authorized to exercise, in felony cases, only the jurisdiction of a committing magistrate. In my opinion the Legislature cannot confer the exercise of felony jurisdiction on Magistrates' Courts as at present constituted, and could not in any event, unless such courts were jurisdictionally constituted and organized for the trial of felonies, which, of course, embraces the system of trial by jury. Whether or not the Legislature could constitutionally so far extend the jurisdictional power of inferior courts as to vest them with the general felony jurisdiction now exercised solely by constitutional courts is doubtful and problematical and does not militate against the above conclusion, for the reason that this question is purely speculative, there being no such conferred jurisdiction, although the possibility is suggested in section 18 of article 6 of the State Constitution, which provides that " The Legislature shall not hereafter confer upon any inferior or local court of its creation * * * any greater jurisdiction * * * than is conferred upon County Courts by or under this article." It is excusably elementary, in emphasizing this conclusion, to refer to the " Grand Jury — bill of rights " provision of our State Constitution — "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury, and in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions " (Art. 1, § 6) — and also to refer to the provision that " trial by jury in all cases in which it has been heretofore guaranteed shall remain inviolate forever " (Art 1, § 2).

Attention should be called to the fact that section 18 of article 6 of the Constitution also provides: " Courts of Special Sessions and inferior local courts of similar character shall have such jurisdiction of offenses of the grade of misdemeanors as may be prescribed by law, and the Legislature may authorize them to try such offenses without a jury." A liberal construction of this constitutional provision justifies the conclusion that Magistrates' Courts cannot be empowered by the Legislature to exercise jurisdiction even in cases of the grade of a misdemeanor, unless authorized by statute to proceed as a Court of Special Sessions, for example as at present in New York city, where the defendant waives the right to trial in the statutory Court of Special Sessions.

It can be urged that to give a committing magistrate jurisdiction, in his discretion, to stay felony proceedings when it only appears to

the court that there is reasonable ground for believing the defendant *non compos mentis* to the degree stated in the amended statute, thereby justifying an order for formal inquiry, would be to confer jurisdiction over the felony prosecution, even over the proceedings before a grand jury (there has never before been anything to prevent a district attorney from going to a grand jury while the case was before a committing magistrate); hence it may be stressed that such conferring of jurisdiction would be beyond legislative power. Likewise, if the magistrate, on the theory that this amended statute authorized him to do so, ordered an inquiry and, if he did not stay the grand jury, report was made to him as the committing court, recommending commitment after the finding of an indictment, and he undertook to confirm the report, commit the defendant, and stay proceedings under the indictment, this would in effect be the exercise of felony jurisdiction and a usurpation of the constitutional jurisdiction of the trial court. Again, if the magistrate committed for formal inquiry, etc., and report was made to him before or after indictment, and he undertook to confirm a report entailing commitment, and the defendant tchallenged the report and insisted that he was not guilty, and that he was sane, and demanded his constitutional right to action by a grand jury if not indicted, or demanded a jury trial if indicted, or insisted on waiving examination if not indicted, would not every act of the magistrate thereon be the exercise of felony jurisdiction? How, in such cases, can the jurisdiction of the person of the defendant and the exercise of felony jurisdiction be separated? Does it not follow that the statutory provision in question must be construed to apply only to a court having jurisdiction of the crime as well as of the person of the defendant?

Had the Legislature intended to make so serious a change in the hitherto prevailing practice as would follow this construction of conferring felony jurisdiction on committing magistrates, it would have employed more definite terminology than that used in the new statute. Not until attention was given to the technical implications of the precise language of the new statute was there any intimation that any such innovation might have been contemplated. It was not mentioned during any of the deliberations of the Legislature which enacted the statute. I doubt very positively that it was in the mind of the legislator credited with its introduction, and am satisfied beyond peradventure that it did not occur to the Governor of this State when he approved the proposed statute. When, at various times, the Legislature has intended to authorize action apart from the exclusive jurisdiction conferred in relation to the particular gravity of the crime, it has done so in precise language indicating

its exact intention. The scope and power exercised by magistrates in connection with felonies is a powerful example of that fact.

The limited jurisdiction of a magistrate empowers him to act solely as a committing magistrate, and he must hold for trial or grand jury if there is a *prima facie* case. Suppose a defendant charged with a felony is released on bail (and it may be bail which had to be fixed by a court of record), is there any question that the magistrate is limited to the subject-matter as to whether there is a *prima facie* case *in re* the felony? Suppose, as another illustration, that a defendant charged with a felony and arraigned before a magistrate demands a hearing, and interposes a plea of not guilty with a specification of insanity. In such a case the magistrate could not hear the special plea, for it is entirely an element of defense, triable only in a court having jurisdiction of the trial of felonies. To construe the language of the statute as empowering a magistrate to direct a formal inquiry into the sanity of a defendant charged with murder (which would entail observance of the obligation on the court to see that, while rigidly safeguarding the rights of " The People," the law is observed as provided by section 1120 of the Penal Law, to wit: " A person can not be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense "), and permit adjudication by such magistrate under this statute, on the report of referees or commission, which report may perhaps not be rendered until after indictment by a grand jury, unless an indictment was prevented because, before he was in a position to decide positively that he had reason to believe the defendant to be insane, the magistrate had had the temerity to stay the proceedings of the grand jury, by virtue of the provisions of the same statute, would in my opinion be grave error. It seems to me that at most the Legislature could confer only the power to stay, in a proper case, the proceedings over which the magistrate has jurisdiction, which could easily be accomplished by the customary commitment for observation, etc., and could not include the power to further stay the proceedings and institute a formal procedure which contemplates the exercise by the magistrate of jurisdiction controlling the procedure which essentially involves the exercise of felony jurisdiction, namely, staying a grand jury or a pleading to, or trial under, an indictment.

To construe the language of the statute as conferring such jurisdiction on a magistrate would be to create a situation unique in the history of our jurisprudence, upsetting principle, theory and practice developed through centuries of time. That I do not believe was the intention of the Legislature. In my opinion the

particular ambiguity of the statute giving rise to some belief that it must be construed as conferring jurisdiction, was the result of accident, or faulty drafting, caused by the circumstances referred to elsewhere in this opinion when it was determined to abolish the repealed system of " Lunacy Commissions."

It is hardly necessary to call attention here to the fact that a magistrate has the same jurisdiction to commit a defendant, no matter what the crime charged, that has practically always been exercised by our Magistrates' Courts, and in my opinion this method should obtain in all cases of misdemeanor or felony, whatever misgiving may exist as to the interpretation of the new law. Certainly all the rights of the people and of the defendant will be preserved by this course, and even though the provisions of section 870 of the Code were to be construed technically as conferring jurisdiction in felonies on magistrates, a magistrate would still have the right to commit for observation, as indicated elsewhere in this opinion. It must be borne in mind, also, that it is quite difficult to determine that it appears to the court there is reasonable ground for believing a defendant insane, unless and until there is some hospital report.

In all types of cases coming into Magistrates' Courts it frequently happens that a defendant requires emergency hospital treatment, whether for acute illness or for injuries sustained in the commission of a crime or in an attempted escape. Often there is an intense mental condition, which may or may not be insanity and is betrayed by such acute physical manifestations that immediate treatment or hospitalization is necessary. In such emergencies this has always been accomplished through the exercise of governmental as distinguished from judicial powers, under correctional or mental hygiene laws which call for the participation of a magistrate or correctional officer to set them in motion. Our system of hospitals specially provides the necessary prison wards. It also happens quite frequently in New York city that even where no crime has been committed the strange behavior or disorderliness of individuals prompts the police or relatives or interested friends to cause their apprehension for safety's sake, and in all of these cases the magistrate is called upon to act. Quite a large number of them are so-called mental cases, and commitments are made to the psychopathic wards of our hospitals under orders which are commonly styled commitments for observation but of course do not call for any referee, commission or formal legal proceeding in connection with their determination. The magistrate commits, and the hospital does the rest, under our Mental Hygiene Laws. These laws have not been repealed or action thereon interfered with by this new statute.

This description of conditions in Magistrates' Courts, calling for co-operation with hospitals, serves to present, pointedly, another phase of the problem involved in the construction and interpretation of the first paragraph of section 870 of the Code of Criminal Procedure. (The two succeeding paragraphs of the section have a bearing on the subject which will be discussed later, but they are not necessary to present the difficulty.) If that part of the first paragraph reading " or charged with an offense not a crime " is to be construed as making it incumbent on the magistrate to issue an order calling for formal referee or commission inquiry, according to the theory, method and form that such proceedings are meant to embrace, to the exclusion of the method of commitment for observation which prevailed hitherto, it will not alone serve no useful purpose not hitherto performed, and in a commendably efficient manner, by our hospitals under the Mental Hygiene Law, but it will unnecessarily and severely tax the psychiatric staffs of all the hospitals in our New York city system, accentuating to an acute degree the hospital administration problem referred to in an earlier part of this opinion, which calls attention to the strain on hospital facilities, the unnecessary interference with general hospital duty, and the unjustified augmentation of the professional staff, which would tend to frustrate in no small measure the very purpose, namely, economy, which prompted the elimination of the repealed commission system. In my opinion such a procedure would, in addition, be woefully unscientific from the standpoint of both law and medicine in applied medical jurisprudence.

In the first paragraph of section 870, repealed, an effort was made to group all of that type of case, of misdemeanor and less, coming into any court, within that scope previously described in this opinion as calling for the exercise of a governmental function as distinguished from a judicial function, even though initiated by a judicial officer. Commitments were made " to the care and custody " of hospital authority, for intended necessary administrative action, and disposition " to the same effect and with the same force as if the defendant were not held to answer a pending criminal charge," and culminating when necessary in hospital procedure " as provided in the Mental Hygiene Law, or by the statutes relating to mental defectives." In the second paragraph (repealed section 870) provision was made, applying to felonies only, for that type of formal commission (medical) previously described, which would be almost entirely concerned with psychiatric clinical diagnosis. The procedural intent was, however, to adhere strictly in these cases to theoretical background justifying commission procedure as an aid to the court, in rendering an interlocutory judgment determining

the question whether the defendant was " incapable of understanding the proceeding or making his defense."

It seems to me that the statute drafting effort, in attempting to cope in the one statute, or one type of statute, with both of these separate theories (governmental and judicial function), calling for judicial action on original commitment, is what has given rise to the confusion and has obscured the intention of Legislatures and rendered difficult judicial construction and interpretation of statutes in determining legislative intention. That conclusion is clearly borne out in our present predicament. I feel justified in repeating that in my opinion, when the Legislature determined to abolish the old form of commission and to substitute in its stead what I have previously described as a new form of commission, thereby eliminating what was regarded as excessive expense incident to the former, it intended to do only that, and did not intend to otherwise unsettle previously established practice. To effect that purpose it became, as previously stated, a mere matter of the mechanics of draftsmanship. When it came to revamping the old section 870, the draftsman had in mind the preserving of the purpose of the old section, without the prescribed commission, and adopted the method resulting in the present enactment. A careful reading of the section will, I think, bear out this conclusion. For the first time in judicial history, lunacy proceedings by commission form were established in a Magistrate's Court, thus conferring a right previously exercised only by higher courts or " courts of superior jurisdiction."

If the subject-matter of " felony " before indictment had been included in the amendment of section 658 of the Code instead of section 870, we would have had less difficulty, because then there would have been no question of magistrate control of commission in felony cases, and we would have had to cope only with the matter of setting up formal commission referee proceedings in minor cases. Paragraphs numbered 2 and 3 of the new section 870 provide for the required treatment of a defendant in precisely the same manner as above described under the repealed section, as the exercise of a governmental as distinguished from a judicial function. It is true that a magistrate may be called upon to intervene, to a very moderate extent, but as a whole it is intended, at least in principle, to effect the same purpose as that provided in the first paragraph of the repealed section, the only difference being that the old section submitted the whole subject to hospital authority.

But of course, even though this line of reasoning is accepted as sound, and even if the Legislature did not, in this connection, intend to do anything that would unsettle the previously established practice prevailing in Magistrates' Courts in this type of case, and

did not foresee the difficulties referred to in this opinion, the fact remains that the plain provision of the statute undoubtedly authorizes the court, when it appears that " there is reason to believe," etc., to order a " defendant to be examined to determine the question of his sanity, and the procedure therefor shall be as set forth in sections " as numerically mentioned. This language admits of no other construction. What, therefore, is the solution?

In view of the foregoing, the answer, it seems to me, is that it is not incumbent on the magistrate, as the only authorized method, etc., to order formal commission inquiry, and that, therefore, magistrates should adhere closely to the well-established practice hitherto prevailing and commit for observation and treatment as heretofore. If a hospital report is returned necessitating any action by the magistrate as contemplated in paragraphs 2 and 3 of the amended section 870 of the Code, such action may be taken in exactly the same manner as if a formal inquiry had been ordered. Otherwise the hospital authorities will be enabled to proceed under the Mental Hygiene Law in precisely the same manner as intended by the Legislature under the new law. Hospital routine as to all this type of cases would, therefore, proceed without a single disturbing factor of either personnel or administration.

It seems to have been the fate, in this State, of statutes relating to the general subject of lunacy proceedings in criminal cases, that their provisions led to confusion, necessitating protracted opinions of construction and interpretation. In *People* v. *Whitman* (*supra*, 177) this court stated:

" Although in operation they have been of great importance, particularly in avoiding the necessity of long drawn out trials, with opposing partisan experts in conflict, and likely consequent injustice in the determination of juries of the question of sanity, it is true that the statutes under construction (sections 658 to 662-a and section 836 of the Code) have led to considerable confusion in practice as a result of imperfect drafting and sporadic amendment and that complete re-drafting and re-enactment was necessary and advisable and still is of the statutes relating to lunacy commissions, so called (sections 658 to 662-a). Section 836 of the Code, which over a period of time had been amended, tinkered with, altered and changed almost beyond intelligent understanding, the provisions of which statute are referred to above as the second method of inquiry, has been amended by complete re-drafting and correction in the last session of the Legislature (Laws of 1933, chap. 564, in effect July 1, 1933), and now seems adequately to state its purpose to meet all necessary requirements.

" Section 658, etc., is said to be derived from Laws of 1871, chapter 666, sections 1 and 2, and section 836 from Laws of 1874, chapter

446, section 26. Although both, particularly section 836, were amended from time to time and added to the Code, the general nature of their provisions were either declaratory of the common law or were the derivations of earlier statutes, some of which were referred to in the decisions above quoted, and notwithstanding the statutory changes made as stated, there was no provision at any time altering the fundamental principle behind their general statutory purpose and intent, namely, providing methods for carrying out the provisions or purpose as expressed in what now constitutes section 1120 of the Penal Law, in accordance with the theory and principle declared in the cited decisions."

The section 836, referred to, became section 870 by later designation, and is the one repealed by the present law. As previously stated, the sections 658–662 mentioned were the old sections. The sections (658–662) repealed by the new statute were enacted in 1936, as a result of years of effort, and were intended to cure many objections to the old law, by requiring mature deliberation before resorting to commission appointment, and making mandatory a standard commission personnel including at least one psychiatrist and one lawyer. The grim humor of the narrative is that these statutes recently repealed (658–662 and 870 of the Code) were the product of a committee, deemed to be experts, consisting of members of the Academy of Medicine, the Bar Association of New York City and this court, who endeavored over a period of years to secure their enactment; and yet they survived a shorter period of time than any of the other statutes on the subject. The defensive answer is, of course, that the sins of the old statutes were visited on the new.

In the light of experience it should not, therefore, be disturbing to have to contend with difficulties of construction, practice and procedure under this new statute. In the vernacular, "we are only running true to form," and encountering the same difficulties that have generally attended similar legislation in the past. Notwithstanding the criticism of any specific provision, I am satisfied that the act can be potentially effective in meeting all necessary requirements in achieving the objective of the law both in theory and in practice, and that it is well calculated to accomplish its economic purpose if prudently administered. It is the duty of our courts to co-operate to the utmost with the hospital authorities, and this duty must of necessity be reciprocal in the efficient application of the new law to the administration of justice. Of course reliance must be had, as well, upon the active co-operation of the bar to the same end.

This court has made earnest endeavor to comply with the request and purpose of this motion in granting the relief prayed for, within

the limited scope that individual judicial action is permissible, and sincerely trusts that the hope expressed on the presentation of this motion, that " an opinion might serve as a guide or lead to an established uniform practice within a short period of time," might possibly be realized in some measure by the rendering of this opinion.