THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROGER HYATT, Defendant.

Supreme Court, Trial Term, Erie County, November 2, 1946.

*Leo J. Hagerty, District Attorney (Ralph W. Simson* of counsel), for plaintiff.

*Edward H. Murphy* for defendant.

OTTAWAY, J. An order has previously been granted herein for the examination of the defendant to determine whether he is incompetent to the extent that he is incapable of making a defense to the indictment (grand larceny, first degree) now pending against him (Code Crim. Pro., § 658 *et seq.*). This order has been executed, the examination held and the report filed. A copy of this report has been given the defendant's attorney and he has appeared and been heard. He does not controvert the findings of those who made the examination but addresses himself to the question of where the defendant shall not be committed.

The District Attorney urges that the commitment may not be to a hospital for the insane provided by the Department of Mental Hygiene. The defendant urges that the court may exercise discretion as to whether this commitment be to a State hospital for the insane of the Department of Mental Hygiene or a State hospital for the insane of the Department of Correction.

The procedure before us is outlined in chapter V of title XII of the Code of Criminal Procedure. This chapter provides for the " Inquiry into the Insanity of the Defendant before or during the Trial, or after Conviction." The practice prescribes that the court make the appropriate order for examination (§ 658); that the examination be conducted (§ 659); that the report be made and presented (§ 662); that a hearing be held (§§ 662-a, 662-b) and if defendant is found to be incapable of understanding the proceedings or of making his defense, that an order be made suspending the proceedings and committing the defendant to a State hospital (§ 662-b).

This section 662-b of the Code of Criminal Procedure provides that such commitment may be to a State hospital for the insane either of the Department of Correction or of the Department of Mental Hygiene. Applied to the present case, this means either to the Matteawan State Hospital or to the Buffalo State Hospital.

It should be noted, however, that article 5 of the Mental Hygiene Law provides for " Commitment, Custody, Maintenance and Discharge of the Insane ". Section 70 of this article is entitled " Admission procedures." The District Attorney calls attention to the following language in the opening sentence, viz.: " Any person alleged to be mentally ill to a degree which warrants institutional care, and who is not in confinement on a criminal charge, may be admitted," etc. Other sections of this same article contain similar provisions restricting admission so as not to include those under confinement on criminal charges. It is worthy of note that this section 70 has been a part of our law much longer than chapter V of title XII of the Code of Criminal Procedure which was enacted in 1939 (L. 1939, ch. 861) and has been since subject to minor amendments only.

By the enactment of 1939, the Legislature sought to provide better practice in regard to obtaining expert medical opinion as to the competency of defendants and better procedure in directing measures for defendants' protection and for immediate care, all in advance of the time when guilt or innocence has been established. This has been referred to as a legislative purpose to correct the " over-formal procedure, expense and inefficiency of the lunacy commission system." (*People ex rel.*

*Klesitz* v. *Mills,* 179 Misc. 58, 62; see, also, *People* v. *Pershaec,* 172 Misc. 324.)

Although section 70 of the Mental Hygiene Law provides only for admission procedure for one " not in confinement on a criminal charge ", it must be concluded that the Legislature, by the enactment of the various sections of chapter V of title XII of the Code of Criminal Procedure, has provided a further admission procedure to a State hospital for the insane of the Department of Mental Hygiene and that this procedure may be employed under the exercise of a discretion on the part of the presiding judge in regard to a defendant who is being held to answer on a criminal charge (*People* v. *O'Connor,* 16 N. Y. S. 2d 156; see, also, *People* v. *Tripoli,* 38 N. Y. S. 2d 288). To hold otherwise is to eliminate from section 662-b of the Code of Criminal Procedure a part of the protective procedure which the Legislature has evolved. In the *O'Connor* case (*supra,* pp. 158–159) it was said: " This  *  *  * section shows the major change which is now incorporated in the procedure. Heretofore, commitment had to be made to a State Hospital for the Criminal Insane (Matteawan) but now the alternative is given to commit to a State Hospital for the Insane either of the Department of Correction (Matteawan) or of the Department of Mental Hygiene (any one of the State Hospitals such as Central Islip  *  *  * etc.)."

There remains here only the question of how this discretion as to the place for defendant's commitment should be exercised. In view of the fact that he has previously been committed to the Buffalo State Hospital, that his family request his return there, that the report of the examiners contains a recommendation that he be recommitted there, we fix the Buffalo State Hospital as the hospital for the insane to which he should now be committed. Nothing in the papers or in the argument before us has suggested that this defendant has any dangerous or violent tendencies whatsoever. No great harm can result from the construction which we have placed upon the statute and the exercise of discretion which we have now stated, for there still exists a simple procedure by which transfer of this defendant can, if necessary, be made from the Buffalo State Hospital to the Matteawan State Hospital. (Mental Hygiene Law, § 85 *et seq.*)