THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRANK RANDAZZO, Defendant.

County Court, Kings County, November 6, 1942.

**128**

*Thomas Cradock Hughes, Acting District Attorney (Abraham Brodsky of counsel), for plaintiff.*

*Caesar Barra for defendant.*

FITZGERALD, J. The defendant, while in custody under an indictment for burglary in the third degree and petit larceny, by order entered herein on August 26, 1942, was committed to the Division of Psychiatry of Bellevue Hospital for examination as an alleged mental defective. Under date of September 14, 1942, a report was submitted of the result of the examination which was conducted by "Carter N. Colbert, M. D., Acting Director, and Benjamin Apfelberg, M. D., Senior Psychiatrist, Qualified Psychiatrist."

The concluding paragraph of the report is as follows: "To sum up, careful and detailed psychiatric examination reveals that this individual is a mental defective (high-grade moron to borderline defective), and that if convicted, he is found to be a suitable case for commitment to the Institution for Male Defective Delinquents at Napanoch, New York."

Upon the filing of said report notice was given of such filing and that the report would be considered at a time therein designated.

Defendant objects to any action by the court on two grounds:

(a) That the court was without authority to commit the defendant for examination as a mental defective, and therefore the entire proceedings are void.

(b) That the persons making the examination and report, are not within the classification authorized by law to make such examinations.

The unchallenged practice for many years has been to commit persons even though charged with crime, for examination as mental defectives.

Such procedure is not authorized by the Code of Criminal Procedure. It is only when there is reasonable ground for belief that a defendant, under indictment for a felony or misdemeanor, is in such a state of idiocy, imbecility or insanity, that he is incapable of understanding the charge, indictment or proceedings or of making his defense that he may be examined as to his sanity. (Code Crim. Pro., § 658.)

"Mental defectiveness * * * is a condition of mind which is a departure from the general normal, but which is not a diseased condition, or insanity." (*People ex rel. Beldstein* v. *Thayer,* 121 Misc. Rep. 745.)

The authority to commit for examination as to sanity, under section 658 of the Code of Criminal Procedure does not include power to commit for examination as to mental defectiveness.

The court has been unable to find any statute empowering the commitment for examination as to mental defectiveness of persons in custody charged with crime.

Subdivision 1 of section 124 of the Mental Hygiene Law (Cons. Laws, ch. 27), as added by L. 1936, ch. 563, § 5) provides, "A person alleged to be mentally defective, and *who is not in confinement on a criminal charge,* may be committed to and confined in an institution for the custody and treatment of the mentally defective, * * *." (Italics supplied.)

Subdivision 1 of section 121 regulating admission procedure likewise provides " any person alleged or certified to be mentally defective and in need of institution care, and *who is not in confinement on a criminal charge,* may be admitted to and confined in a state institution for mental defectives, * * *." (Italics supplied.)

Prior to 1936, the former section 124 of the Mental Hygiene Law provided for the commitment of mental defectives over sixteen years of age *charged with a misdemeanor;* and former section 125 provided for an examination of such a person arraigned on a criminal charge either before or after trial or conviction. But those sections were repealed by section 4 of chapter 563 of the Laws of 1936, and other provisions numbered sections 121 to 136 were enacted. The authority to have examined, or to commit any alleged mental defective, was omitted and none now exists.

Prior to 1939 section 870 of the Code of Criminal Procedure provided for the examination of persons not held for felony but in confinement under criminal charges appearing insane or mentally defective. That section was repealed, however, by chapter 861 of the Laws of 1939. As revised section 870 provides for the examination of a person charged with a felony or misdemeanor, where it appears that such defendant is in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceedings against him or of making his defense.

As heretofore stated the procedure followed herein has been the customary practice for years. It has never been challenged

heretofore. After the revision of the provisions of the Code of Criminal Procedure and other statutes in 1939 relative to the procedure to be followed under revised laws, Judge COLLINS of the Court of General Sessions wrote the opinion in *People* v. *Pershaec* (172 Misc. Rep. 324).

It was written immediately after the revised laws regulating examinations of persons believed to be insane went into effect. It was most comprehensive, and its purpose was to outline a possible uniform procedure that might be adopted by various courts called upon to make commitments for observation and examinations of persons alleged to be insane. It was frankly stated that the decision would not be binding, but the purpose was clearly stated. It was pointed out therein that to commit for examination as to mental condition a court had to have sufficient and satisfactory proof that the individual appeared to be insane, et cetera. But, it was held that the court had not been deprived of its inherent right to make a commitment for a preliminary inquiry so as to determine whether the elaborate investigation usual in inquiries as to an individual's sanity should be initiated. While I do not agree that such authority is given either in the Code of Criminal Procedure, or by subdivision 5 of section 81 of the Mental Hygiene Law, I am convinced that the compelling reasons, stated by Judge COLLINS, justify the conclusion that the right to commit for a preliminary inquiry is inherent in the court, has always been recognized and has never been disputed.

Objection is further made that the report is not signed either by qualified examiners, or a qualified examiner and a qualified psychologist.

The qualifications of qualified examiners and qualified psychologists are defined by section 19 of the Mental Hygiene Law and the qualifications of qualified psychiatrists by section 27. An examination of those sections discloses that qualified psychiatrists must possess all the qualifications of qualified examiners with additional qualifications specified in the statute. The court is not impressed by the objection. Moreover inquiry discloses that the qualified psychiatrists who made the examination and signed the report are qualified examiners, and if necessary could sign the report herein as such.

The contention that the defendant is entitled to a hearing and an opportunity to oppose the report in my opinion is premature. No action can be taken on the report while the defendant remains unconvicted.

A commitment to Napanoch is not a judgment. A judgment is the sentence imposed upon conviction. A commitment to Napanoch by a court of competent jurisdiction is a final disposition of the indictment or criminal offense charged and wholly divests the court of jurisdiction over the prisoner under said commitment and by reason of said offense.

The court may not thereafter sentence the defendant or take any other steps in connection with the case. (Correction Law, § 438; Cons. Laws, ch. 43; *People ex rel. Meyers* v. *Lawes,* 242 App. Div. 647.)

Section 444 of the Correction Law provides that to commit a person as a mental defective the certificate of mental defect must have been made within the sixty days preceding the order of commitment. The date of the certificate shall be the date of the last examination. The report of the examination herein is dated September 14, 1942. Defendant has not been convicted. He cannot be committed as a mental defective until convicted. It is impossible to determine whether he will ever be convicted, or if he be, whether the conviction will be within sixty days of the last examination.

The defendant contends and the authorities appear to support his claim that he may not be committed upon the certificate of mental defect without a hearing, and an opportunity to controvert the finding that he is a mental defective. (*People* v. *Johnson,* 252 N. Y. 387, 392; *People ex rel. Morriale* v. *Branham,* 178 Misc. Rep. 728; *People ex rel. Barone* v. *Fox,* 202 N. Y. 616; *People ex rel. Ordway* v. *St. Saviour's Sanitarium,* 34 App. Div. 363.)

Those questions, however, may properly be answered when and if the defendant be ever so situated that they will arise.

Much of the existing confusion as to the powers of the courts, and as to the correct procedure, is due to the fact that when the abolition of lunacy commissions was sought in 1939, no such comprehensive study and analysis of the then-existing statutes were made so as to cover many situations likely to develop. A simple amendment to section 658 of the Code of Criminal Procedure to include persons believed to be mental defectives would eliminate all confusion and uncertainty and the correct procedure definitely settled.

The court is indebted to counsel for defendant for the comprehensive and exhaustive review of the existing statutes and their history as well as for the applicable decisions.

Meanwhile the report herein will be ordered filed and further action deferred until the defendant's innocence or guilt of the crimes charged be determined.