In the Matter of EDWARD C. EATON, as Treasurer of the Department of Mental Hygiene and of the Syracuse Psychopathic Hospital, Petitioner, against ONONDAGA COUNTY et al., Respondents.

Supreme Court, Equity Term, Onondaga County, August 27, 1949.

*Nathaniel L. Goldstein, Attorney-General (E. David Wiley* and *Herman H. Arkin* of counsel), for petitioner.

*Charles Major,* County Attorney (*Edmund B. Tyminski* of counsel), for respondents.

SEARL, J. This is the return of an order to show cause in certiorari (Civ. Prac. Act, art. 78) as to why the court should

not direct the County of Onondaga, through its Board of Supervisors, County Auditor and Treasurer to audit, allow and to provide funds to pay claims of the petitioner for care, medical treatment and maintenance of certain persons directed by court order to be committed to Syracuse Psychopathic Hospital, such orders arising out of criminal actions or offenses specified in the Penal Law or Code of Criminal Procedure during the period from May 19, 1942, to July 31, 1949. A supplemental petition was filed, verified the 26th day of February, 1948, covering additional claims, the total of both claims aggregating $17,673.23, which petitioner claims to be due from the county, together with interest.

The return and answer of the respondents as to both the original and supplemental omnibus claims denies liability on the part of the county on the ground that the commitments were not made according to law; that the courts committing said persons named in the claims had no legal power to do so, and upon the further ground that the charges are improper, illegal and void.

The petitioner urges that Syracuse Psychopathic Hospital is an agency of the State of New York and an institution within the Department of Mental Hygiene for the care and treatment of those mentally ill; that between the dates referred to, pursuant to sections 658 *et seq.* and sections 870 *et seq.* of the Code of Criminal Procedure, the County Judge, Justices of the Peace, Judges of Special Sessions of the City of Syracuse, and Judge of Children's Court, signed orders committing several hundreds of persons to the hospital for a period not to exceed a specified number of days in each particular case for observation and examination; such orders were made by the committing justice, or his duly authorized assistant; that the hospital honored such orders, provided food, care and medication of each defendant; that bills for the care of those committed were duly approved by the committing magistrate; that in each case the person was committed upon a court order arising out of criminal action or an offense specified in the Penal Law or Code of Criminal Procedure. The answer and defense of the respondents allege that the orders of commitment are illegal and void for the reason that sections 658, etc., and 870 of the Code of Criminal Procedure only authorized the court to direct " defendant to be examined to determine the question of his sanity "; that the courts have no power to commit a defendant except as provided in section 660 of the Code of Criminal Procedure.

Section 79 of the Mental Hygiene Law is entitled "Liability for care, maintenance and treatment of poor and indigent mentally ill persons". However, the second half of the section as amended by chapter 769 of the Laws of 1946 provides: "The maintenance, care and treatment of any patient of a state institution, other than Matteawan State Hospital or Dannemora State Hospital, admitted thereto upon a court order arising out of a criminal action, *or any offense specified in the penal law or code of criminal procedure* shall be paid by the county from which such patient was admitted." (Italics added.)

A previous amendment (L. 1944, ch. 666) reads: "The maintenance of any patient of a state hospital, other than Matteawan State Hospital or Dannemora State Hospital, admitted thereto upon a court order arising out of a criminal action, shall be paid by the county from which such patient was admitted."

The previous legislation from which present section 79 springs will be considered later.

The first question to determine is whether or not the contention of the respondents is sound upon the theory that the title of present section 79, relating only to "care, maintenance and treatment of poor and indigent mentally ill persons", is confined to those alone, or whether the section contemplates covering as well persons admitted upon a court order, "arising out of a criminal action, or any offense specified in the penal law or code of criminal procedure".

Historically, the expense of caring for the insane was a county charge, with the county having the right in certain instances to reimburse itself from the town in which the insane person resided. In 1896, and in response to a more enlightened view as to the nature of mental disorders with a consequent increase in the cost of care and treatment, the State assumed the cost in the care of the poor and indigent, still holding the county liable, however, where the person was confined in connection with criminal proceedings. Such a distinction has been maintained to the present day. (*County of Jefferson* v. *County of Oswego,* 102 App. Div. 232, affd. 186 N. Y. 555.) As illustrative, section 32 of chapter 135 of the Laws of 1842 provided: "If any person in confinement, under indictment or under sentence of imprisonment, or under a criminal charge, or for want of bail for good behavior, or for keeping the peace, or for appearing as a witness, or in consequence of any summary conviction, or by order of any justice, or under any other than civil process, shall appear to be insane, the first judge * * * shall insti-

tute a careful investigation * * *.'' The expense of the patient was made a county charge. The wording by '' any other than civil process '' is important in deciding the present issue, for the substance of this section, enacted so long ago has persisted. Such is apparent in the legislative enactments through the years. Therefore, the court is compelled to rule against respondents upon this argument.

The next question presented is in cases where Onondaga County has refused to pay charges where the defendant has been charged with an offense not defined as a crime in the Penal Law. This was upon the theory that certain orders of commitment were not criminal orders and did not arise out of a criminal action within the meaning of section 79 of the Mental Hygiene Law. Although, in some instances, an offense is not indictable, still where a proceeding is brought by the People of the State of New York before a court of criminal jurisdiction, it must be regarded as a criminal proceeding if the penalty is fine or imprisonment. The magistrate is acting relative to a case of a criminal nature when ordering the commitment of a defendant to an institution for observation and examination as to his sanity. The justice is not acting in a civil proceeding when signing a commitment for public intoxication, breach of the peace, or similar offenses. Such offenses are clearly of a criminal nature.

By chapter 861 of the Laws of 1939, the Legislature simplified the procedure by an act to amend the Criminal Code in relation to an inquiry into the sanity or mental condition of a defendant before or during the trial. Section 870 was amended to read as follows:

'' *Court order for examination as to sanity of a defendant not under indictment.*

'' 1. If at any time it shall appear to a court having jurisdiction of a defendant charged with a felony or a misdemeanor but not under indictment therefor or charged with an offense not a crime, other than a traffic infraction as defined by the vehicle and traffic law, that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceedings or of making his defense or if the defendant makes a plea of insanity, the court, upon its own motion or that of the district attorney or of the defendant, may in its discretion stay the proceedings and order such defendant to be examined to determine the question of his sanity, and the procedure there-

for shall be as set forth in sections six hundred fifty-nine, six hundred sixty, six hundred sixty-one, six hundred sixty-two, six hundred sixty-two-a, six hundred sixty-two-b, and six hundred sixty-two-c.''

An examination of this amendment indicates clearly an intention of the Legislature to include offenses of a criminal nature, except traffic infractions. This leads us to the conclusion that those offenses for which orders of commitment have been made to the psychopathic hospital are to be deemed within the scope and provisions of section 79 of the Mental Hygiene Law as it has existed for many years. It eradicates the argument that such an order of commitment to a psychopathic hospital is a civil and not a criminal proceeding. It clearly indicates that the law contemplates the power of the committing magistrate to order confinement for the purpose of observation and treatment in cases other than felonies or misdemeanors, as so defined in the law. Such practice, if not contrary to the intent of the statute, is clearly for the benefit of the mentally sick as well as for the public. It permits the court to retain jurisdiction in cases that might otherwise turn out disastrously to the patient as well as to the public.

Respondents urge that from 1943 until the amendment to section 870 of the Code of Criminal Procedure by chapter 635 of the Laws of 1946 there was no provision in the code placing cost of maintenance on the county. Section 662-e was amended by chapter 289 of the Laws of 1943 and provided that outside of New York city the fees of an examining psychiatrist and the costs of sending a defendant to a hospital for examination, '' of his maintenance therein and of returning him shall, when approved by the court, be a charge on the county in which the defendant is being tried.''

The Attorney-General by opinion (1945 Atty. Gen. 243) held that when a person had been committed to Matteawan, and became a State charge, and subsequently transferred to an institution in the Department of Mental Hygiene for examination, pursuant to section 662-b of the Code of Criminal Procedure, the cost of maintenance of defendant in the latter institution was a county charge only when admitted by court order. The court order is the determining factor. The opinion of the Attorney-General, aforesaid, confirms this when he states therein: '' The provisions of Section 79 of the Mental Hygiene Law are clear and unambiguous and only place the cost of maintenance upon the county when the patient is directly admitted to one of your institutions by court order.''

Section 870 of the Code of Criminal Procedure and section 79 of the Mental Hygiene Law are not in conflict. They can properly be read together without interference. Section 79 is derived from former section 76. That section as contained in chapter 426 of the Laws of 1927 contains the provision: '' The maintenance of any inmate of a state hospital committed thereto upon a court order arising out of a criminal action, shall be paid by the county from which such inmate was committed.'' This section in turn came from section 85 of the former Insanity Law (L. 1909, ch. 32); further back, from the Insanity Law of 1896 (L. 1896, ch. 545, § 65), and by further reference originally from chapter 135 of the Laws of 1842, already referred to.

Assuming for the moment that there existed no legislation placing the burden of maintenance of the criminal insane on the county, still a magistrate has the power to, by order, obtain information for the proper determination of his judicial functions and direct the county in which he serves to pay the expense thereof. If we adopt the language of the court in *People* v. *Pershaec* (172 Misc. 324, 334), the court has power, regardless of the section '' to commit for necessary treatment and observation a defendant in custody, either as a common-law or an inherent right or under the Mental Hygiene Law.''

Respondents in the present case object to some of the orders of commitment to the psychopathic hospital for failure to state that it '' appears to the court that it has reasonable grounds to believe that the defendant is in such mental state as to be incapable of understanding the nature of the charge.'' Clearly the court cannot be expected to pass definitely upon this question until he is advised by a competent examining physician. An order may depend upon some hearsay evidence that the magistrate receives as to the mental condition of the defendant. That may properly be the reason why the defendant is committed to the psychopathic hospital for treatment and observation. The matter rests in the discretion of the magistrate. Very often, in the Supreme Court, orders are made without recitation in detail of all of the reasons for the issuance thereof. Why should a magistrate of an inferior court be required to more definitely particularize? Technicalities in the form of the order must be overlooked.

So long as the magistrate acquires jurisdiction, he has the right to detain a defendant accused of either a felony, a misdemeanor or an offense, if, in the discretion of the magistrate, the defendant should be detained for examination as to his

sanity. (See *Mudge* v. *State of New York,* 271 App. Div. 1039, and also *Whitehead* v. *De Andrea,* 186 Misc. 546.)

As to whether so-called offenses are included in the category of crimes, we find under " Definitions ", as constituting section 2 of the Penal Law that:

" A ' crime ' is an act or omission forbidden by law, and punishable upon conviction by:

    " 1. Death; or

    " 2. Imprisonment; or

    " 3. Fine; or

    " 4. Removal from office; or,

    " 5. Disqualification to hold any office of trust, honor or profit under the state; or

    " 6. Other penal discipline.

" Except that the acts defined as traffic infractions by the vehicle and traffic law  *  *  * are not crimes."

The same includes such minor offenses, so regarded, at least by some, as disorderly conduct, intoxication, etc. This leads to the conclusion that bills contracted on court order for the maintenance of criminal insane must be paid by the county. The magistrates and judges making the commitment have already so ordered.

It appears reasonable to accept the argument of the petitioner to effect that had the Legislature intended to repeal the provisions of section 79 of the Mental Hygiene Law, which has survived for over a century, from 1842, it would have passed appropriate legislation.

It has been stipulated that the various claims for payment by the county be segregated into categories and that the decision by the court as to one claim selected in each of the twelve categories apply to all similar claims falling into that particular category.

As to category No. 1, relating to the claim of Myrtle Abbott, the objection raised by the respondents " that the court order does not state that it appears to the court that it has reasonable ground to believe that the defendant is in such mental state as to be incapable of understanding the nature of the charge ", the substance of the order is apparent. Therefore, respondents' objection must be overruled.

As to category 2, claim of Carl Almfelt, the objection interposed is that the defendant was not indicted for a felony or misdemeanor. Clearly, the amendment of section 870 (L. 1939, ch. 861) cured any possible question as to the right of the State to recover.

Category 3, claim of Eugene J. Allen, respondents claim that defendant was committed for a period not to exceed thirty days, and was detained by the hospital for a period of forty-nine days, being nineteen days beyond the period mentioned in the order. The court has no information as to whether a further order was obtained authorizing the extention of the period of maintenance. If not, the county is liable for a period not to exceed thirty days. As to the balance of the period, namely nineteen days, the county is not liable unless an extension order was obtained.

Relative to claims in category 4, claim 292, Ernest Smithers, objection is made that the order of commitment was signed by the clerk of the court and not by the Justice of the Court of Special Sessions.

The act creating the Court of Special Sessions (L. 1928, ch. 188, § 18) provides: " The clerk shall have the power * * * to make and sign executions, commitments and certificates of convictions * * *."

Category 5, relating to claim No. 295, Jerome M. Spurr, raises the same objection as to commitments signed by the deputy clerk. The enabling act last above referred to provided " said justice of special sessions shall have such other clerical assistance as the board of estimate and apportionment may prescribe * * * then such deputy clerk or deputy clerks shall have the same powers as the clerk of the court."

In regard to claim No. 141, category 6, Clarence Hibbard, defendant was convicted of " willful trespass ". On January 21, 1943, defendant was committed while charged with disorderly conduct. He was later committed for observation and treatment by the Judge of Special Sessions, Syracuse, on June 3rd of the same year.

The answer is that section 870 of the Code of Criminal Procedure gives the court the right to commit at any stage of the proceedings. This charge was an offense punishable by fine or imprisonment.

To the same extent the court must rule in regard to category 7, claim No. 240, Frank J. Piazza. Public intoxication is punishable by fine or imprisonment and is therefore an offense.

Relative to category 8, Anita I. Jenkenson, claim No. 156, disorderly conduct, the same answer must be given as to category 6.

In regard to category 9, claim 160, Robert E. Jordan, " where defendant was charged with failure to support a family ", the case comes within the class of statutory offenses termed " special

proceedings of a criminal nature ''. Punishment therefore is prescribed by statute (Children's Court Act, § 31-a). The Children's Court Act (art. 1) confers this jurisdiction. (See *People* v. *Kaminsky,* 208 N. Y. 389, 394, and *People ex rel. Cosgriff* v. *Craig,* 195 N. Y. 190.)

Category 10 relates to an order by Judge of Children's Court which commits a defendant on probation from Children's Court for purposes of observation when the court has reason to believe defendant may be insane. The commitment must be held good.

As to category 11, paragraph (c) of subdivision 2 of section 6 of article 1, of the Children's Court Act provides in part: '' Any violation of any order made pursuant to the provisions of this section is punishable as a misdemeanor.''

As to category 12, Amos Bacon, order No. 12, under application of decision already made the petitioners may recover.

Findings may be prepared. Respondents may be credited with any payments made. Petitioner may recover balance without interest.

To provide a more uniform rule for the future, the court suggests: First, that the magistrate follow the statute. Second, that whenever in doubt the magistrate obtain the assistance of a District Attorney or the advice of the director of a psychopathic hospital; if cases of emergency arise, the advice of a local physician as to whether the defendant should be temporarily committed for observation or examination (without charge to the county therefor). Third, that an order of commitment be signed for the purpose of examination, and fourth, that upon request of the director of a psychopathic hospital an order be made transferring the defendant from the place of incarceration to the hospital for the purpose of such examination. The District Attorney has the requisite forms for this purpose.