Matthew M. Levy, J.
This is an application for a writ of habeas corpus based upon the claims (among other grounds not meriting mention) that the relator was denied the right to competent counsel of his own choosing, that he was denied the right to withdraw a plea of guilty, and that he was denied a transcript of the minutes of his trial on a pauper’s application so that he might prosecute an appeal.
The relator was indicted for feloniously possessing a narcotic drug with intent to sell, feloniously possessing a narcotic drug, assault in the second degree, feloniously possessing a hypodermic needle, and assault in the third degree. Prior to the commencement of the trial the relator had had five assignments of counsel; the case had been marked ready for one week before it was reached for trial; and, at the trial, the relator asked for an additional adjournment which was refused by the court. The trial started on February 17, 1955, in the Court of General Sessions, New York County, continued throughout that day, then continued again on the next day. After the arresting officer had testified and had been cross-examined by the relator’s counsel, the trial court was advised that the relator desired to “ take a plea ” to a misdemeanor and stop the trial. The District Attorney recommended the acceptance of the plea. Counsel for the relator informed the trial court that he had conferred with the relator, that the latter had been duly apprized of his rights, and that he was not forced to plead guilty as desired by him. Before accepting the plea, the trial court made certain that the relator personally knew and understood what was occurring. The relator, personally, stated to the court that he wanted to plead guilty to the misdemeanor and that he had heard the testimony of the detective; and then, in open court, the relator admitted possession of the drug known as heroin and that he had had it in his possession for the period of one day. Thus it was that, during the second day of the trial, a mistrial was declared, and the defendant was permitted to plead guilty to the unlawful possession of a narcotic drug, as a misdemeanor.
On March 16, 1955, the relator appeared for sentencing. According to the stenographic minutes of the proceedings on the sentence (produced by the relator on the hearing of this writ), it was then that the relator, through his counsel, made an application to withdraw the plea of guilty and to be per *114 mitted to plead not guilty. The trial court denied the request. Reviewing the relator’s criminal record (which dated back to 1938) the court sentenced him to the New York City Penitentiary, there to be dealt with according to law.
Assuming, without holding, that the instant judgment of the Court of General Sessions can be attacked through the medium of the writ of habeas corpus, the record is plain that the relator’s application should be denied.
It is not disputed that the relator had five different attorneys representing him on the charges against him. It cannot be contended that he did not have adequate choice of counsel. Indeed, it may seem that he was afforded a much wider choice than is normally available to the vast majority of defendants in criminal cases. Moreover, it is crystal clear that the relator had ample opportunity to prepare for trial and that his last attorney rendered excellent professional services in the matter. The sentencing court noted that trial counsel for the relator had done “ a very good job for him, getting him a misdemeanor plea in view of the situation ”.
The trial actually was in progress for two days and it was only after the relator personally requested that the trial end and that he be allowed to take the lesser plea (after he had been fully informed as to his rights) that a mistrial was declared by the court and he was given leave to confess guilt to a misdemeanor. Nowhere in the record is there any claim of innocence made by the relator. Nowhere does it appear that any reason was given by him or his attorney as to why the plea of guilty should be permitted to be withdrawn. In the circumstances, the relator cannot successfully claim that he was not given every consideration and that he was not accorded due process of law. The fact that he now has had a change of heart, or that he wishes to play foot-loose and fancy-free with the administration of criminal justice, cannot affect the regularity of the proceeding.
Once a mistrial was declared, that trial was at an end and there was nothing to appeal from in that regard. If an appeal were to be taken by the relator it would be from the trial court’s denial of the application for leave to withdraw the plea of guilty. That motion was made and denied on March 16, 1955. It developed upon the hearing of the present matter before me that the relator had in his possession the official stenographer’s minutes of the proceedings before the sentencing court. These minutes show that they were transcribed on March 24, 1955, only eight days after sentencing. It thus appears that the relator has had the minutes for more than a year, and he there *115 fore had ample opportunity to proceed by way of appeal. His failure to do so cannot be attributed to any one else. His claim that he should have been supplied with a stenographic copy of the trial minutes (assuming that he needed them for his appeal) must also fall. This is not a case where the judgment is of death or of life imprisonment following a recommendation of a jury pursuant to section 1045-a of the Penal Law. Although a defendant in other criminal actions may be financially unable to purchase the stenographic minutes, that does not under the statute warrant (without more) a direction to the court reporter that — gratis — he transcribe his notes and furnish the typed transcript to the defendant (Code Crim. Pro., §§ 308, 485; People v. Raymondi, 180 Misc. 973, appeal dismissed 268 App. Div. 863). Moreover, it appears from the record here that such compulsion in this case was denied by the Court of General Sessions and by the Appellate Division. If there were any merit to the relator’s contentions on his assumed prospective appeal, I do not doubt that the transcript would have been made available to him by one court or the other.
I have thus far proceeded on the assumption that this is a proper case in which to invoke the writ of habeas corpus. It is my view, however, that the relator’s remedy, if any there be on the facts, is through the medium of a motion in the Court of General Sessions, of an appeal to a higher court from the judgment in General Sessions, or of writ of coram nobis in General Sessions. (Matter of Morhous v. Supreme Court of the State of N. Y., 293 N. Y. 131, 140; see, also, People v. Sadness, 300 N. Y. 69, 73-74; People v. Kendricks, 300 N. Y. 544; Matter of Lyons v. Goldstein, 290 N. Y. 19, 25; People v. Richetti, 302 N. Y. 290.) A habeas corpus proceeding may not be resorted to as a substitute. (Ex Parte Siebold, 100 U. S. 371; People ex rel. Danziger v. Protestant Episcopal House of Mercy, 128 N. Y. 180; People ex rel. Scharff v. Frost, 198 N. Y. 110.) The only inquiry that may be properly conducted by the Supreme Court, where the defendant is held pursuant to a valid commitment, is whether the court had jurisdiction of the case and authority to pronounce sentence (Matter of Morhous v. Supreme Court of the State of N. Y., supra, p. 135; People ex rel. Hubert v. Kaiser, 206 N. Y. 46, 54; Civ. Prac. Act. § 1254). That inquiry I have made, and both jurisdiction and authority there clearly are.
Accordingly, the writ is dismissed and the relator is remanded.