Matthew M. Levy, J.
The person on whose behalf this writ of habeas corpus was obtained appeared before a City Magistrate of the City of New York in the Manhattan Housing and Building Court as a defendant in a number of cases involving allegedly unlawful conditions in buildings owned by him. He was represented by counsel. In two of these cases, misdemeanors, the defendant waived examination, and he was held in bail for the Court of Special Sessions. Another case was found to be a duplication and was dismissed. To the remaining seven charges, the relator pleaded guilty. These involved violations of section 131.03 of the New York City Health Code, which provides that a residential building owner is under a duty to supply sufficient heat.
The Magistrate heard argument by the tenants’ attorney, to the effect that they had been forced to heat the buildings themselves for a time during the Winter, and that children living there had become ill. City inspectors made detailed statements to the court as to the poor living conditions in the defendant’s dwellings, and the Assistant Corporation Counsel recounted the defendant’s history as to prior similar infractions. The records revealed approximately 32 prior convictions.
*662 During the presentation of statements of counsel, the defendant twice voluntarily interposed — once saying: “ I don’t feel well ’ ’; and, on the other, saying: ‘ ‘ Please call a doctor. I don’t feel well. Call a doctor. ’ ’ He said and did nothing else throughout the proceedings. No comment was made by court or counsel as to these remarks, but, after the defendant’s attorney’s final plea for the court’s mercy, the Magistrate said to the defendant: “ Now, Mr. Weinstein, I have been on the Bench here nearly eight years. I don’t think I have ever had a defendant before me who was as cruel as you are, absolutely callous to the feelings of other people, little children, sick children. I don’t believe anybody in his normal mind could do what you have done over the period of several years. You have forty-some-odd prior convictions. ■ You pay no attention to the authorities, no attention to the courts, no attention to these inspectors. I think you are a cruel, vicious man and I don’t think that you could possibly be normal — so therefore you are committed to Bellevue for examination. Bring him back to this Court for sentence and the case must be before me.”
The Magistrate’s formal order recited that “ the court having reasonable ground for believing that said defendant is in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge, indictment or proceedings or of making a defense and the court having directed the mental examination of the said defendant pursuant to section 870 of the Code of Criminal Procedure ”, the defendant is, “ on motion of the court, committed to the Department of Hospitals * * * for such mental examination for a reasonable period not to exceed sixty (60) days to be examined to determine the question of h[is] sanity ’ ’. The Magistrate further ordered that the defendant is to be returned to the City Prison upon completion of such examination, and that a report thereof is to be made to him as provided in section 662 of the Code of Criminal Procedure.
One day after the order and commitment this application for the instant writ of habeas corpus was presented to this court on behalf of the defendant by a new attorney representing the defendant, and a hearing has been held thereon. The contention made in support of the writ is that the order is void upon two principal grounds: first, that, where a defendant is charged with an “ offense ” and not a “ crime,” a City Magistrate lacks the power, after a plea of guilty, to order a commitment of the defendant for mental observation; and, second, that, as to the commitment in the case at bar, the Magistrate disregarded the constitutional rights of the defendant. No issue was raised as to the jurisdiction of the Magistrate over the subject matter of *663 the offense charged or over the person of the defendant in respect thereof (see Mierop v. State of New York, 22 Misc 2d 216).
There is no dispute that the defendant was charged with an “ offense ”— neither less than that (cf. Matter of Waldau, 125 N. Y. S. 2d 793) nor more. An offense is an illegal act “ not amounting to a crime, as defined in the Penal Law, but which by statute carries with it a penalty similar to those imposed by law for the punishment of a crime.” (Matter of Waldau, supra, p. 796.) While violations of the Health Code are made punishable by sections 1740 to 1764 of the Penal Law, section 102-c [now § 95] of the New York City Criminal Courts Act expressly exempts certain sections of the Health Code, classifying them as offenses only. Among these is section 131.03 of the Health Code, a violation of which is made punishable by a fine not to exceed $200 or imprisonment not to exceed three months, or both. By thus classifying this infraction, the Legislature has removed it from the category of crimes, since section 2 of the Penal Law includes as crimes only felonies and misdemeanors.
The distinction between crimes, on the one hand, and offenses, on the other, becomes important — urges the relator — when we examine the statutes having to do with procedures providing for commitment for mental observation pending judicial disposition of criminal matters. Thus, section 870 of the Code of Criminal Procedure, so far as pertinent here, reads as follows: “ If at any time it shall appear to a court or magistrate having jurisdiction of a defendant charged with a felony or misdemeanor but not under indictment therefor, or charged with an offense which is not a crime * * * that there is reasonable ground to believe that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceeding or of making his defense, the court or magistrate upon his own motion or that of the district attorney or of the defendant may in his discretion order such defendant to be examined to determine the question of his sanity.”
The language of section 870 must now be reread in juxtaposition with section 658 of the Code of Criminal Procedure, which reads as follows: “ If at any time before final judgment it shall appear to the court having jurisdiction of the person of a defendant indicted for felony or a misdemeanor that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, or if the defendant makes a plea of insanity to the indictment, instead of proceeding with the trial, the court, upon *664 its own motion, or that of the district attorney or the defendant, may in its discretion order such defendant to be examined to determine the question of his sanity ’
The relator argues that section 870 limits commitment for mental examination, in cases of felonies and misdemeanors, to preindictment situations, and, in cases of offenses, to those instances where the defendant is ‘ ‘ charged ’ ’ therewith. On the other hand, while section 658 provides for similar post-indictment procedure for felonies and misdemeanors, there is no provision authorizing the court to exercise its discretion in the case of offenses. From this legislative state of affairs, the relator argues that there was no power in the Magistrate to order the challenged commitment, since the defendant was no longer “charged” with an offense (as provided in § 870) but, by his accepted plea of guilty, had already been “ convicted ” of the commission thereof — and, being beyond the comparable “postindictment” period provided in section 658, the Legislature did not intend to give the Magistrate the power to commit for observation for presentence purposes.
The question may be put as to whether, prior to the entry of the court’s judgment, one is “ convicted ” of a crime or offense upon his pleading guilty thereto. The further question may arise whether one is still “charged” with a crime or offense until the time when he has been sentenced in pursuance of a plea of guilty. These critical words are not of art and do not have the same respective meaning in every statutory context (cf., e.g., People ex rel. Hutchings v. Mallon, 218 App. Div. 461, affd. 245 N. Y. 521; People ex rel. Vischi v. Martin, 8 N Y 2d 63; Matter of Hope, 7 N. Y. Crim. Rep. 406; Smith v. State of Florida, 75 Fla. 468; State v. Ju Nun, 53 Ore. 1; United States v. Bentvena, 193 F. Supp. 485, 503 [U. S. Dist. Ct., S. D. N. Y.]). And I could find no authoritative precedent on either point in respect of the specific statutes here involved. My own answer is in the negative as to the first, and, as to the second, in the affirmative.
I do not go along with the relator in his construction of the statute. Although the section could have been more artistically phrased and punctuated, it is my view that the court or Magistrate was granted jurisdiction to order a mental examination before sentencing a defendant when he is charged with, or has pleaded guilty to, or has been convicted of, an offense. Section 658 does not refer to “ offenses ”, but section 870 does and provides in effect that a court or Magistrate, with jurisdiction of a defendant charged with a felony or misdemeanor before indictment or with an offense not a crime, may order an exam *665 ination to determine Ms sanity if at any time there is reasonable ground to believe that he is in such a mental state that he cannot understand the charge or proceeding or make his defense. As I read this section, the preindictment limitation applies to crimes, not offenses.
What precedents there are do not support the relator’s argument. Thus, in Matter of Eaton v. Onondaga County (196 Misc. 648, affd. without opinion 279 App. Div. 1038, motion for leave to appeal denied 280 App. Div. 881), the court held that among the many criminal charges included under section 870 is the offense of disorderly conduct. At page 653, the court said that ‘1 the law contemplates the power of the committing magistrate to order confinement for the purpose of observation and treatment in cases other than felonies or misdemeanors, as so defined in the law ”, and then concluded (p. 656) that section 870 gives the court the right to commit at any stage of the proceedings, noting that the provisions of the statute are expressly made applicable “ at any time [that] it shall appear * * ® that there is reasonable ground to believe ’ ’ that there should be an order for examination as to the sanity of the defendant.
Another statute also requires consideration. Section 1120 of the Penal Law provides that a “ person can not be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense.” (Emphasis supplied.) Does it follow, then, as urged by the relator, that the Legislature intended that a person may be ‘‘ tried, sentenced to any punishment or punished” for an offense, even though he is then “ in a state of idiocy, imbecility, lunacy, or insanity so as to be incapable of understanding the proceeding or making his defense ”? I most emphatically think not. Some offenses carry with them substantial punishment — by way of imprisonment or fines or stigma, or all. If due process is to have any meaning in this area, it must mean that a defendant prosecuted for an offense is entitled to understand what he is charged with, what is going on in the proceedings against him, and what the sentence might be — with the same responsibility of judicial protection as if he were brought before the court for a more serious violation.
Even if section 870 cannot be construed as I read it, I hold that the power to commit for preliminary mental examination prior to sentencing — whether for a felony, a misdemeanor or an offense — is within the inherent juridical competence of any duly constituted criminal court having appropriate jurisdiction. And subdivision 2 of section 147 of the Code of Criminal Pro *666 cedure includes in the classification of Magistrates the “ judges of local courts of inferior jurisdiction established for cities [such as New York] which are expressly authorized by law to act in criminal matters. ’ ’
In Mudge v. State of New York (271 App. Div. 1039) the court said that “ [d] espite the procedural requirements which then obtained (L. 1939, ch. 861, § 2), we consider that the Magistrate had inherent power to order or continue a detention for an examination to determine whether the more elaborate and formularized inquiry should be had.” In People v. Randazzo (179 Misc. 127, 128) the court noted that although there was not always literal compliance with the statute “ [t]he unchallenged practice for many years has been to commit persons even though charged with crime, for examination as mental defectives. ’ ’ To the effect that the power to commit is inherent in a court with jurisdiction of the crime and of the defendant, see, also, People v. Pershaec (172 Misc. 324, 340).
The District Attorney, on behalf of the respondent, has presented an apt supposititious case which, in my view, effectively disposes of the relator’s contention to the contrary. Let us assume that a defendant is charged with an offense (although not a crime — not a felony or misdemeanor) which can and would subject him to a penalty of six months’ confinement or for an indeterminate period up to two years (Correction Law, § 203), and that he pleads guilty before, or is convicted by, the Magistrate having jurisdiction in the premises. Prior to sentencing, the defendant by his conduct would appear to be completely insane. What should the Magistrate do in the face of such a situation? Should he sentence the defendant despite the fact that the defendant may have legal cause as to why sentence should not be imposed upon him, but is incapable of expressing himself to counsel or court because of his mental condition? Or should the Magistrate suspend the imposition of sentence until the defendant is overtly and ostensibly capable of understanding the nature of the proceedings? The first alternative would be barbaric, the second absurd. For, by feigning insanity in court on each occasion when he is scheduled for sentence, a clever rogue on bail could forever avoid being sentenced. The appropriate answer, of course, is commitment for observation by medical experts. This procedure is generally provided for by statute and is essential for the protection of the defendant and of the public and for the informed guidance of the court.
The basic principle underlying this judicial power, whether legislatively established or traditionally inherent, is that one held on a criminal charge of any kind should not be tried, sen *667 tenced or punished while he is incapable of making a defense or of understanding the proceeding (see Parker, The Determination of Insanity in Criminal Cases, 26 Cornell L. Q. 375 [1941], for the historic background of the statutes). What the Court of Appeals said in People v. McElvaine (125 N. Y. 596, 600-601) should be recalled here: “It is now a fundamental principle in all civilized countries that this defense [insanity], when established, shall furnish to the accused not only a protection against conviction for crime, but a sufficient reason why he should not be tried or sentenced, or if tried and convicted, why the judgment of the court should not be executed; and this rule has, for a long time, been a part of the statutory law of this state. (§ 20, Penal Code; 2 E. S. 697, § 2.) These statutes express a humane principle, and the law makers of the state have, by numerous provisions, so guarded the rights of such persons, that they cannot be lawfully punished for an act which was committed by them while in a state of insanity, or when they have become insane during or after a trial or conviction. (§§ 336, 658, 481, Code of Criminal Procedure.) It is the duty, as it should always be the inclination, of courts to give effect to these provisions of law, and, so far as human judgment and intelligence can determine, to see to it that no person is punished for an act done while mentally incapable of distinguishing the character of such act, or is incompetent to understand and appreciate the cause and object of his punishment.”
Holding, as I have, that a City Magistrate may— either under the statute or by virtue of the power inherent in a judicial tribunal, or both — order the mental examination of a defendant who has pleaded guilty before him to the commission of an offense, consideration must next be directed to whether, in any case, that power does not run afoul of the defendant’s constitutional rights. It is urged by the relator that such a commitment for observation, however preliminary to the judicial action of sentence — involving, as it does, compulsory and uninterrupted attendance in a psychiatric division of a municipal hospital and examination by medical experts there — impinges upon the defendant’s rights as guaranteed by the Constitution in that he received no notice prior to commitment and no opportunity to answer the court’s directive in that respect, in that he has been denied a jury trial as to the issue of his mental competence, in that he has been subjected to cruel and unusual punishment, and in that he has been deprived of his liberty without due process of law. This contention, although urged by the relator with eloquence and fervor, was not adequately analyzed by him within the ambit of the precepts of constitutional law. And the *668 issue was not briefed in any respect by the respondent. It cannot be ignored by me.
I have had occasion to point out elsewhere that, in my view, when the matter of sentence is involved after conviction, the tribunal having jurisdictional competence to punish may ascertain— without the constitutional necessity of giving notice to the defendant and without being required to give the defendant an opportunity of being heard in opposition — any facts from any source which will aid that tribunal in arriving at the measure of the punishment to fit the offense (see Matter of Phinn v. Kross, 26 Misc 2d 889, 896, affd. 15 A D 2d 641).
It is well at this point to recall what Mr. Justice Black, speaking for the Supreme Court of the United States, had to say on this matter:
“ The case presents a serious and difficult question. The question relates to the rules of evidence applicable to the manner in which a judge may obtain information to guide him in the imposition of sentence upon an already convicted defendant. Within limits fixed by statutes, New York judges are given a broad discretion to decide the type and extent of punishment for convicted defendants. Here, for example, the judge’s discretion was to sentence to life imprisonment or death. To aid a judge in exercising this discretion intelligently the New York procedural policy encourages him to consider information about the convicted person’s past life, health, habits, conduct, and mental and moral propensities. The sentencing judge may consider such information even though obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine. It is the consideration of information obtained by a sentencing judge in this manner that is the basis for appellant’s broad constitutional challenge to the New York statutory policy. * * *
“We cannot say that the due process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence. * * * We hold that appellant was not denied due process of law.” (Williams v. New York, 337 U. S. 241, 244-245, 252.)
The present problem goes further: Can the court constitutionally direct the defendant to submit to mental examination in aid of the court’s function to sentence the defendant for the commission of a crime or offense?* If that were the base upon *669 which the power rested, the respondent might be hard put to sustain it. But the jurisdiction is not thus grounded, as has been seen from my prior discussion in this opinion. That that is so is buttressed, I think, by an analysis of the several points raised by the relator to support the contention of unconstitutionality.
As to the right to notice and to be heard. It is constitutionally axiomatic that no person shall be deprived of life, liberty or property without due process of law. But what is “ due process ” in any specific case is not always subject to easy or ready answer. For example, due notice and the right to be heard in advance of judicial action is normally a basic concept of due process. Tet, some ex parte procedures, in the face of the constitutional quarantees, are not unique in our laws. Where the equities require speedy action, our courts are empowered to issue and execute temporary restraining orders and temporary injunctions — and even warrants of arrest in civil cases — before the defendant may be heard in protest. Such was the rule prior to the adoption of the Constitutions, and, since then, enactments so providing are within the legislative powers of a State (Civ. Prac. Act, §§ 815, 882). On the same rationale, it would seem to me that a law or procedure in the criminal area of the judicial process, aimed at protecting a defendant and society by allowing immediate suspension of proceedings against him, and authorizing preliminary commitment for a reasonable period to permit observation and examination as to his mental state — where there is reasonable belief that the defendant is mentally incapable of understanding the proceedings or presenting his defense — does not contravene due process rights. (See comment Lynch v. Overholser, 369 U. S. 705, 711-712.)
As has been seen, section 1120 of the Penal Law provides that one charged with a crime cannot be tried, sentenced or punished while incapable of understanding the proceeding or making a defense. As has been seen, too, sections 658 and 870 of the Code of Criminal Procedure enable the trial court to commit a defendant for observation on the reasonable belief he is incompetent and there is no requirement that he be given notice or afforded the opportunity to be heard.**
The Model Penal Code, adopted in May, 1962 by the American Law Institute, provides, with respect to a defendant’s “ mental disease or defect excluding fitness to proceed ” (art. 4, § 4.04): “No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist *670 in Ms own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures.” Section 4.05 provides, insofar as relevant here, that: “ (1) Whenever the defendant has filed a notice of intention to rely on the defense of mental disease or defect excluding responsibility or there is reason to doubt his fitness to proceed, or reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the Court * * *
may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination for a period of not exceeding sixty days or such longer period as the Court determines to be necessary for the purpose. ’ ’
Determination of the issue now being considered involves the resolution of a conflict in constitutional policy. The Bill of Bights guarantees due process, and this ordinarily includes notice and an opportunity to be heard. But the power summarily to commit for observation rests on what would also seem to be included in the constitutional guarantee of due process — ■ that one who is mentally incompetent should not be compelled to proceed to trial or subjected to the danger of being punished where he is unable to understand the proceedings (4 Blaekstone, Commentaries [4th ed., Cooley, vol. 2,1899], p. 24 et seq., pp. 395-296; 1 Hale, Pleas of the Crown [1st Amer. ed., 1847], p. 34 et seq.; see Maroney, ‘ ‘ Mental Condition of an Accused: Pre-Trial, Trial and Post-Trial ”, 13 Syracuse L. Bev. 287, supra; Lindman and McIntyre, The Mentally Disabled and the Law, p. 357). And, where the defendant is in such a state of insanity, imbecility or idiocy as not to be able to understand the legal proceedings involved in being sentenced for the commission of a crime or offense which was prosecuted against him, it is fair to assume that he will not understand the collateral judicial proceedings which would be involved in seeking to ascertain the quality and extent of his mental illness and of his fitnes to proceed in court and there protect his rights and interests.
In resolving that conflict, I hold that the statutory and inherent power of the court summarily to commit for mental observation a defendant who has been charged with the commission of an offense or a crime and has entered a plea of guilty, and is thus subject to sentence, does not run counter to constitutional prohibitions. That power, of course, does not exist in a vacuum. It may be exercised only where there is reasonable doubt as to the defendant’s capacity to proceed with understanding, and as a means of informing the court quickly of the defendant’s mental state (People v. Pershaec, 172 Misc. 324, supra). Before final commitment or adjudication of incompetence, the defendant has *671 a constitutional right to be heard (see Sporza v. German Sav. Banh in City of N. Y., 192 N. Y. 8).
In People ex rel. Klesitz v. Mills (179 Misc. 58) Judge Fboessel, when at Special Term, considered the procedure outlined in sections 658 through 662 of the Code of Criminal Procedure — whereby a defendant may be committed for observation summarily and, if psychiatrists agree that he is in a state of insanity, he may be committed permanently after having the opportunity to be heard — and the court concluded that, under such a procedure, a defendant is not deprived of his rights of due process. Some years later, Judge Fboessel, for the Court of Appeals, was faced with a similar question in Matter of Coates (9 N Y 2d 242, appeal dismissed sub nom. Coates v. Walters, 368 U. S. 34). The problem there arose under the Mental Hygiene Law. The appellant had been committed for observation on the petition of her husband and two doctors. She did not receive personal notice, since it was medically and judicially held — ex parte — that this would aggravate her condition. After examination, a final certification was filed to the effect that permanent care was needed. The appellant received no notice of this. When she was conditionally released from the hospital she moved to vacate the entire proceedings upon the ground that she had been denied due process. The court denied the application to vacate the proceeding and ruled (pp. 249-251) that the interim confinement was not a violation of due process since there was a right to subsequent proceedings. And it upheld (p. 252) the final certification without notice or hearing on the ground that the commitment would not be final for appeal purposes until 30 days after the appellant had received personal notice.
It is not necessary for me to go that far in the instant case (see critical comment in 75 Harv. L. Rev. 847; cf. 28 Brooklyn L. Rev. 148). But I am of the view, on a fair parity of reasoning, that temporary confinement of a defendant for expert observation prior to sentence — when there is reasonable cause to believe that he does not have adequate mental capacity — is not violative of his constitutional rights. As I see it, a swift procedure is needed so that neither society nor defendant will suffer; and a prompt examination and healing should be assured. In the order signed by the Magistrate, he directed that the defendant be committed for mental examination for “ a reasonable period not to exceed sixty (60) days ”. It would seem that the statutory limit and the nature and effect of the permissible punishment for the offense charged, are factors to be taken into account in determining what would be “ a reasonable period ” *672 for the mental examination in any ease. What the situation would he in the case at bar if the defendant’s actual temporary confinement for observation were unduly and unreasonably prolonged, I need not discuss. The present writ of habeas corpus was applied for and obtained within one day after the hospitalization directed by the Magistrate, and I hold that that period does not come within the purview of an unreasonably extended confinement.
As to a jury trial. The Federal and State Constitutions assure a defendant the right to trial by jury where he had such a right at common law (U. S. Const., art. III, § 2; N. Y. Const., art. I, § 2). Notwithstanding some statements seemingly to the contrary (4 Blackstone, Commentaries [4th ed; Cooley, vol. 2, 1899] pp. 24-25, supra), it is my view that there was no right to a jury trial on this issue, although there would be a due process right to a judicial hearing before a final order of commitment could be made. (Cf. Nobles v. Georgia, 168 U. S. 398.) This was the opinion of Judge Fboessel in People ex rel. Klesitz v. Mills (179 Misc. 58, supra). There, a Magistrate having committed a defendant charged with disorderly conduct to Bellevue for examination, the defendant attacked the order in the Supreme Court on the grounds that it invaded her constitutional rights by depriving her of a trial by jury and by taking her liberty without due process of law. The court distinguished this type of commitment from a permanent one and noted that as “ to the right of a defendant to a jury trial on this issue of present insanity, the better view appears to be that at common law, such right did not exist ” (p. 62).
As to cruel and unusual punishment. Article VIII of the amendments to the Constitution of the United States (applicable to the States by virtue of article XIV of those amendments) provides that “ Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” A similar provision, in substance, is found in section 5 of article I of the New York State Constitution. It is these clauses of the Federal and State Bills of Bights upon which the relator relies.
I see no merit to this contention. It has been held that statutes providing for confinement of the accused, if he is found insane, until it is ascertained that his reason has been restored, are not unconstitutional as inflicting cruel and unusual punishment. (Germany v. Hudspeth, 209 F. 2d 15, 19, cert, denied 347 U. S. 946; State v. Toon, 172 La. 631, 642; People v. Chapman, 301 Mich. 584, 608; Matter of Moulton, 96 N. H. 370, 373; State v. Saffron, 146 Wash. 202, 207.)
*673 The relator has cited no authority, no precedent, to the contrary. That is not surprising. For it would seem that it would be quite cruel, quite unusual, quito inhuman, for a criminal court to do the contrary — to proceed to sentence a defendant without directing that there be a mental examination of the defendant — when the court, in the words of the statute, has “ reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense
A case which arose in Ohio is of some interest on this point. In that State, where the defendant has been found guilty of specified crimes of serious import, it is mandatory for the court to commit him for psychiatric observation and examination for a period not to exceed 60 days. The constitutionality of this law was upheld on the principle that the statute aimed at the protection of both the public and the offender by seeking to prevent sentencing of the mentally ill (State v. Ross, 96 Ohio App. 157, 163, appeal dismissed 161 Ohio St. 408, cert, denied 348 U. S. 846).
In a recent study, the author notes that, prior to the modern statute, a procedure had developed in New York of conducting a preliminary examination to determine if there was reasonable ground to believe that the defendant was unable to understand or make a defense (Maroney, Mental Condition of an Accused; Pre-Trial, Trial and Post-Trial, 13 Syracuse L. Rev. 287, p. 288, supra). Under the statute, no such initial inquiry by the court is required. The decision to commit for observation rests in the discretion of the presiding Judge or Magistrate (People v. Pershaec, 172 Misc. 324, 335, supra), but the defendant is safeguarded in the protection of his constitutional right of due process by the statutory requirement “that there [be] reasonable ground to believe that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the proceeding or of making his defense ’ ’.
Whether or not there was “ reasonable ground” for the Magistrate’s directive in the instant ease, is the final issue to be resolved.
Of course, an exercise of discretion by one having jurisdiction will not be reviewed by way of a writ of habeas corpus (People ex rel. Ludwig v. McDonnell, 2 Misc 2d 111, 115 and cases cited therein), but the question is presented here as to whether there was jurisdiction. As I view it — even with jurisdiction over the offense and the person of the defendant — there is no jurisdiction in the court to order the hospital commitment of the *674 defendant for mental examination and observation unless 11 it shall appear * * * that there is reasonable ground to believe that such defendant is in such [mental] state * * * that he is incapable of understanding the charge or proceeding or of making his defense.” (Code Crim. Pro., § 870.)
I construe this section to mean, as to this issue, that it must “ appear ” on the record that there was “ reasonable ground ” for the Magistrate’s belief. In People ex rel. Apicella v. Superintendent of Kings County Hosp. (173 Misc. 642, 643-644) the court (Froessel, J.), said: “I can conceive of a situation whereby the magistrate’s inspection of a defendant and his actions in the courtroom and the latter’s prior record might be sufficient, but at least some record, however informal, should be made of the facts from which it appears that there is reasonable ground for the magistrate’s action.”
I hold that the Magistrate could not have proceeded in this area without some evidence in the record and without reasonable ground therefrom for his belief. To paraphrase and carry further what Mr. Justice Black said for a unanimous court in Thompson v. City of Louisville (362 U. S. 199): Just as conviction upon a charge not made or to convict and punish one without evidence of his guilt would be a sheer denial of due process, so it is (at least, in my opinion) a violation of due process to commit a defendant for psychiatric observation, examination and diagnosis without evidence that there was reasonable ground to believe that he was mentally unable to understand the proceeding in which he was to be sentenced for the commission of an offense (p. 206). The ultimate question presented is whether the doubt of the Magistrate as to the defendant’s mental capacity to understand the proceedings was so totally devoid of evidentiary support as to render his commitment unconstitutional under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States and under the similar clause in the Constitution of the State of New York (p. 199).*
If, as is argued by the respondent, the Magistrate had full opportunity, prior to the order of commitment, to observe the defendant personally, his demeanor and actions, and to note the tone and inflection of the defendant’s voice, and that he had before him the defendant’s background, as well as his prior record, and it was upon this basis in its entirety that the Magis *675 trate exercised Ms discretion to order the mental examination, I am confronted by the record of the proceedings before the Magistrate, and that does not disclose either that there was any evidence therein to support such a directive or indeed that the action was grounded upon any fact in or dehors the record other than the defendant’s prior similar violations. I repeat here what was the sole expressed basis for the Magistrate’s decision: “ I don’t think I have ever had a defendant before me who was as cruel as you are, absolutely callous to the feelings of other people, little children, sick children. I don’t believe anybody in his normal mind could do what you have done over the period of several years. You have forty-some-odd prior convictions. You pay no attention to the authorities, no attention to the courts, no attention to these inspectors. I think you are a cruel, vicious man and I don’t think that you could possibly be normal —■ so therefore you are committed to Bellevue for examination. Bring him back to this Court for sentence and the case must be before me.”
I need not expand upon the fact that I sympathize with the Magistrate’s opinion that a landlord who, in the operation of his properties, has repeatedly violated the Health Code to the detriment of his tenants may well be cruel and callous. It is known that, in certain economic circles, some few selfish real estate owners pay no attention to violations placed upon their properties or to prosecutions for the commission of the health code and similar offenses. Their cold and calculating theory is that the fines thereupon imposed are business expenses,* as in the routine conduct of their affairs — and, if, perhaps, a jail sentence results in an aggravated case, that circumstance is a hazard, to be taken in one’s stride, not to be wished but not always entirely unexpected.
However, being a scofflaw, even of that kind, is not — without more — an indication of mental inadequacy within the meaning of section 870 of the Code of Criminal Procedure. One may be fully able to present his defense and to understand court proceedings in which he is involved notwithstanding that he repeatedly violates the law. In holding otherwise the Magistrate has imported into our law a socio-economic theory of crime and punishment and of mental health that is not consistent with the accepted concept upon which legal responsibility for one’s conduct is based. Indeed, the Legislature has, in several instances, provided for increased punishment — sometimes man *676 datory — for second, third, fourth and multiple offenders. (See, e.g., Penal Law, §§ 998, 1940,1941, 1942.)
I hold that, in acting under the bare assumption that the record of violations of this defendant warranted a reasonable belief that he was subject to commitment for psychiatric study for the purposes stated, the Magistrate proceeded without jurisdiction in the premises. Accordingly, the writ is sustained, and the defendant is released from the hospital commitment. He is remanded to the respondent Warden to be produced before the-appropriate court for sentence in pursuance of his pleas of guilty to the offenses charged. Order signed.
• APPENDIX I
Upon the hearing of the writ, a stipulation was entered into by the attorneys for the parties, reading, in part, as follows: “It is further agreed between counsel that the only question before the court is that of jurisdiction, that whether or not Magistrate * * * had reasonable cause to question the relator’s mental state is an area into which we may not inquire.”
The question which comes to the fore is whether, in the face of the stipulation, I was entitled to examine the record to determine whether “ there is reasonable ground to believe that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceeding or of making his defense ” (Code Crim. Pro., § 870).
I am of the considered opinion that, not only was I authorized, but, indeed, required, to make this study. And this, for several reasons: (1) The stipulation states “that the only question before the court is that of jurisdiction.” Unless, under the statute and at common law, it did “ appear ” to the Magistrate that there was such “ reasonable ground,” there would, I hold, be no “jurisdiction” in the Magistrate to make the order of commitment. (2) The stipulation states that “ we [meaning the attorneys for the parties who signed the stipulation] may not inquire ” “ whether or not ’ ’ the Magistrate ‘ ‘ had reasonable cause to question the relator’s [that is to say, the defendant’s] mental state ”. That, as I read it, seems to be an agreement between counsel that they would not produce proof before me, oral or documentary, one way or the other, as to “ reasonable ground,” but would both rely upon the official record of the proceedings before the Magistrate, which was presented to me by them as “ complete and accurate.” (3) In any event, as I see it, if the stipulation went beyond that, and was intended to preclude this court from a study of the record before the Magistrate to ascertain whether he had “reasonable ground ” to *677 believe that the defendant was mentally unable to proceed, that was an agreement between counsel which cannot be binding upon the court. I am of the view that, in a habeas corpus proceeding — that ancient writ protective of the basic rights and liberties of each and all (People ex rel. Fusco [Galgano] v. Ryan, 204 Misc. 861, 864) — the court is not to be limited in its sights by the narrow confines of an agreement between counsel, but must look to the substance of the record in order to determine whether there was jurisdiction in the Magistrate to order the commitment.
APPENDIX II
The psychiatric report received from the Bellevue Hospital Center — made after two days of intensive study from the date of the commitment — stated that, when the defendant “was asked about why he allowed summonses to collect against him and did not act on them — the summonses being about his presumed negligence as to giving heat to his tenants and other matters — he stated: “ Some houses pay and some don’t. There was one fellow who got the other tenants in the house a lawyer to advise them not to pay their rent, so I didn’t have the money to fix things. I had to fix up things slowly and piecemeal”. When it was pointed out to him that he let summonses collect, he merely stuck to his point in a rather self-protective and compulsive manner.
The report further stated, so far as relevant here, that “ [s]ince his admission to the ward this patient has shown no unusual behavior. At psychiatric interview he was well oriented in all spheres and responded in a coherent but rather stilted manner. No delusions or hallucinations were expressed or elicited. Affect was rather blunted but not inappropriate. While at times he hesitated, his memory seemed fairly well preserved for one of his age. Insight was retained.”
In summary, the conclusions were: i 1 There is no definite evidence of a psychosis or mental deficiency. He represents a personality disorder with some obsessive features. Whether or not this represents the onset of senile change cannot be determined ”. And, following, in substance, the key language of the statute, the report concluded that the defendant “ is not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge, indictment, proceedings, or of making his defense.”
By consent, after two days at Bellevue Hospital Center, the defendant was released on bail pending the disposition of this proceeding.

 As I see it, the constitutional issue here is the same, whether the defendant is to be punished for an offense or a crime, or by the Magistrates’ Court or any other court having criminal jurisdiction.

 Sections 70 et seq. and 121 et seq. of the Mental Hygiene Law, similarly, provide for summary commitment, with the right to a hearing on demand.

 In the cited ease, the Supreme Court of the United States reversed a conviction for the offenses of loitering and disorderly conduct resulting in a fine of $10 on each of the two charges. The court, per Black, J., said (p. 203) “that although the fines here are small, the due process questions presented are substantial

 It has been held, however, that similar disbursements are not deductible for income taz purposes (Tank Trunk Rentals v. Commissioner, 356 U. S. 30).